**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Ronald FORBES,
Defendant–Appellant.**

No. 94–5330.

United States Court of Appeals,
Fourth Circuit.

Argued March 10, 1995.

Decided Sept. 13, 1995.

---

**ARGUED:** James Stockton Perry, Perry, Perry, Perry, Perry & Grigg, Kinston, NC, for appellant. William Arthur Webb, Assistant United States Attorney, Raleigh, NC, for appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Joseph N. Walden, III, Third Year Law Intern, Duke University, Raleigh, NC, for appellee.

Before HALL and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Affirmed by published opinion. Judge HALL wrote the opinion, in which Judge MOTZ and Senior Judge BUTZNER joined.

## OPINION

K.K. HALL, Circuit Judge:

William Ronald Forbes appeals his convictions on two counts of making a false statement to acquire a firearm and two counts of receiving a firearm while under indictment. We affirm the convictions.

### I.

On November 16, 1991, Forbes was arrested in Pitt County, North Carolina, after he fired a gun at Kevin Corbett. Attorney Jeffrey Foster was appointed to represent him. In December, a probable cause hearing was held in state district court. Probable cause was found, and the case was bound over to the grand jury. Forbes was then released.

On July 20, 1992, the state grand jury indicted Forbes. He was charged with assault with intent to kill and various lesser crimes. Arraignment was scheduled in state superior court on August 3. A copy of the indictment and notice of the court date were placed in Foster's box at the court clerk's office.

Foster mailed Forbes a letter on July 27 to inform him of the court date. The address Foster had in his files was vague ("Greenfield Heights, Farmville, North Carolina 27828"), and the letter was returned with the

Postal Service's notation, "attempted—not known."

At some time prior to October 16, Forbes called Foster's office and provided a better address. Arraignment was rescheduled for October 19, and, on October 16, Foster mailed a new letter to inform Forbes of the required court appearance. He appeared as directed and ultimately pled guilty to one state charge.

Meanwhile, on October 2 and 3, Forbes and a friend, John Wooten, had gone to a local gun shop and bought two assault weapons, clips, and ammunition.[1] Forbes filled out the Bureau of Alcohol, Tobacco, and Firearms form for both purchases, because his friend did not have a North Carolina driver's license. The form asks, among other things:

Are you under indictment or information,* in any court for a crime punishable by imprisonment for a term exceeding one year?

The asterisk leads the applicant to a note, defining "information":

A formal accusation of a crime made by a prosecuting attorney, as distinguished from an indictment presented by a grand jury.

Forbes checked the box "no," and consequently he was able to purchase the weapons.

On April 20, 1993, Forbes was charged with two counts of knowingly making a false statement in order to purchase a firearm, in violation of 18 U.S.C. § 922(a)(6), and two counts of receiving a firearm while under indictment, in violation of 18 U.S.C. § 922(n).

The trial was very short. The government first called the gun shop owner, David Bullock, to the stand. Bullock related the happenings at the sales. He remembered that Forbes had asked for ammunition that could go through a bulletproof vest, and he denied that Forbes had ever mentioned using the assault weapons for hunting. The investigating ATF agent, John Corpening, closed the government's case. Corpening reported that Forbes had given him a statement. The statement was reduced to writing, and Forbes signed it. In pertinent part, Forbes said,

In October, 1992, me and John Wooten went to Bullocks Gun Store in Greene County near Lewis Store. The first time we went there I told the man we wanted to take a class on hunting and wanted hunting rifles.

The guns sit on the floor. He showed us a lot of rifles. We looked at two rifles. He asked us about both of them and let us test them out. He's got a firing range right there. John liked the AK. He asked if I liked the other gun and I said, "It's all right." John wanted his so he told Bullock he wanted that one.

* * *

I showed [Bullock] my driver's license. He said, "You have to be 18 or older and fill out this paper." He said, "Read these questions." They are yes or no questions and [fill] them out. I filled out the form. When I got to the question about the indictment it confused me, so I skipped it and did the others. Then I went back to it and read it again. I saw the part about the grand jury and knew I hadn't gone before a grand jury so I said, "No."

* * *

I saw my probation officer two or three days after and he told me it was against [the] law for me to have a gun.[2] My probation officer was Craig Jackson. I told John [Wooten] I couldn't take the

---

1. The guns were an AK–47 and a Chinese SKS (with an attached folding bayonet). According to the gun shop owner, Forbes bought a 55–round clip and "about seven" boxes (20 rounds each) of armor-piercing bullets to go with the AK–47, and a 30–round clip with a "few more" boxes of ammunition for the SKS.

2. At the time he bought the guns, Forbes had three prior adult convictions—assault inflicting serious injury, breaking and entering, and attempted larceny. He has since been convicted of

another (the charge he was under indictment for at the time). In every case, his sentence has been very short or else suspended in favor of probation and/or community service. When his probation was finally revoked in May, 1993, he was released on parole within four and a half months. Notwithstanding these prior convictions, Forbes was not charged with violating 18 U.S.C. § 922(g)(1), which prohibits possession of firearms by convicted felons.

[hunting] class so I told John to sell it and he paid for it. He told me he sold them to some hunters, some white guy.

Corpening also sponsored a copy of the July 20 grand jury indictment and recounted how he took handwriting exemplars from Forbes and sent them to a Treasury Department lab for analysis.

The government then read three stipulations into evidence: (i) Forbes was indicted on July 20, and was under indictment on October 2 and 3, 1992; (ii) the two rifles purchased on October 2 and 3 had been shipped in interstate commerce; and (iii) the lab report showed that the ATF forms at issue were in Forbes' handwriting.

The government rested its case. Forbes' motion for judgment of acquittal was denied. Forbes then called Foster to attempt to establish a reasonable doubt about whether he knew he was under indictment when he bought the guns. Foster testified that he described the court system to Forbes on December 6, 1991. He explained that, if probable cause were found in district court, the case would be presented to a grand jury, which could issue an indictment if it so chose. When an indictment was issued, the case would go to superior court, and arraignment would be scheduled. Foster also testified about receiving back the July 27 letter. Finally, he stated that Forbes called his office and gave a current address sometime before October 16, but the actual date was unknown.

Forbes rested, and his renewed motion for judgment of acquittal was denied. He also requested a jury instruction that he could not be guilty of violating § 922(n) unless the government proved that he knew he was under indictment. The district court refused to so instruct the jury.

Forbes was convicted on all counts and was sentenced to a total of 115 months in prison. He appeals.

## II.

### A.

■ Forbes renews his argument that a person cannot violate § 922(n) without knowledge that he is under indictment.

18 U.S.C. § 922(n) states:

It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate commerce.

"Willful" violation of this provision is punishable by up to five years in prison and a $5,000 fine. 18 U.S.C. § 924(a)(1)(D). When Forbes requested an instruction that the government had to prove that he knew he was under indictment when he received the firearms, the district court replied that § 922(n) does not speak of knowledge, and knowledge is therefore not required. At that point, a verdict of guilt on the § 922(n) charges was more or less inevitable, inasmuch as Forbes had stipulated that he had been indicted on July 20 and that the guns had traveled in commerce.

The only cited case that has squarely addressed this issue holds that knowledge of the indictment *is* an element of § 922(n). *United States v. Chambers*, 922 F.2d 228, 240 (5th Cir.1991).[3]

■ There is a long string of analogous Supreme Court cases that are strongly on Forbes' side. The Court recognizes a heavy presumption that Congress does not intend to impose criminal liability without some showing of *mens rea:*

The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and

**3.** The government cites *United States v. Chapman*, 7 F.3d 66, 68–69 (5th Cir.1993). In *Chapman*, the defendant stipulated that he had been tried and convicted of a felony, but had an appeal pending at the time of his receipt of a firearm. The district court ruled that these stipulated facts constituted being "under indictment." The defendant's *knowledge* of the facts was not an issue, so *Chapman* is inapposite.

duty of the normal individual to choose between good and evil.

*Morissette v. United States,* 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952). The Court has even stated that "a [felony] statute completely bereft of a scienter requirement ... would raise serious constitutional doubts." *United States v. X–Citement Video, Inc.,* —— U.S. ——, ——, 115 S.Ct. 464, 472, 130 L.Ed.2d 372 (1994). If possible—*i.e.* so long as the statute does not expressly dispense of a scienter requirement—courts should construe statutes to include one so as to avoid these "serious" constitutional questions. *Id.*

■ It follows, then, that the mere omission of a *mens rea* element in a statute does not mean that Congress did not intend to include one. *Staples v. United States,* —— U.S. ——, ——, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994). Indeed, the concept of *mens rea* is so "firmly embedded" in "the background rules of the common law," *id.,* that it is not at all surprising that Congress might include it in one statute and inadvertently omit it in the next. The Court has taken "particular care ... to avoid construing a statute to dispense with *mens rea* where doing so would 'criminalize a broad range of apparently innocent conduct.'" *Id.* at ——, 114 S.Ct. at 1799 (quoting *Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985)).

*Staples* involved a prosecution for possession of a machine gun. The rifle at issue was a semiautomatic edition of the military's fully automatic M–16. The rifle had been altered (by filing away a metal stop) to be fully automatic. Staples argued that he was unaware that his gun was fully automatic. The district court held that the statute did not require knowledge of the particular characteristics of the firearm that made its possession a crime, and the Tenth Circuit affirmed. The Supreme Court reversed, and, in doing so, stated that "there is a long tradition of widespread lawful gun ownership by private individuals in this country," and, by implication, this included Staples' possession of a

semiautomatic rifle. *Id.* This "innocent conduct" could not be made criminal without a showing that the defendant knew that his gun had the prohibited characteristics.[4]

Finally, the *Staples* Court noted that possession of a machine gun is punished by up to ten years in prison, and the harsh penalty was especially good evidence that Congress intended to punish the cognizant rather than the ignorant. *Id.* at —— – ——, 114 S.Ct. at 1803–1804.

*X–Citement Video* followed *Staples* by six months. There, a video distributor had sold copies of pornographic movies starring Traci Lords, who had appeared in the films before her eighteenth birthday. The jury found that the distributor knew that Lords was underage, and he was convicted of sending child pornography in the mail. The Ninth Circuit reversed the conviction, because it held that the statute (18 U.S.C. § 2252) did not require the government to prove that the distributor knew that Lords was underage— though the government had in fact proved it—and that therefore the statute was unconstitutional on its face.

The Supreme Court admitted that the statute was ambiguous, and that "its most grammatical reading" would support the Ninth Circuit's view. *X–Citement Video,* —— U.S. at ——, 115 S.Ct. at 467. Nonetheless, the Court applied the rule of *Staples* and its predecessors to imply a *mens rea* element applicable to "each of the statutory elements which criminalize otherwise innocent conduct." *Id.* at ——, 115 S.Ct. at 469. Thus construed, the statute was constitutional, and the conviction was reinstated.

These principles apply squarely here. In the eyes of the law (at least in October, 1992), buying an assault weapon is innocent behavior, just as owning a semiautomatic rifle (*Staples* ) and selling a nonobscene movie (*X–Citement Video* ) are. The defendant must have knowledge of the fact or facts that convert this innocent act into a crime. Here, that fact is the existence of a pending indictment.

---

4. On the other hand, the defendant does not need to know that the characteristics *are prohibited;* as the adage goes, "ignorance of the law is no

excuse." Ignorance of the *facts,* however, is a very good excuse.

### B.

Our recent decision in *United States v. Langley,* 62 F.3d 602 (4th Cir.1995), is not to the contrary. In *Langley,* we decided that a conviction under 18 U.S.C. § 922(g)(1) (prohibiting possession of firearms by convicted felons) can be had absent proof that the defendant understood his status as a convicted felon as defined in 18 U.S.C. §§ 921(a)(20) and 922(g)(1).

There are significant differences between *Langley* and this case in both the statutory text and in everyday practicalities. To begin with, the penalty section applicable to § 922(n) offenses, § 924(a)(1)(D), prescribes imprisonment and a fine for "whoever willfully violates" that provision; the section applicable to § 922(g)(1) cases, § 924(a)(2), applies to "whoever knowingly violates" it. In *Langley,* we interpreted "knowingly" as a Congressional endorsement of prior law,[5] which had required only that the ex-felon know that he had received, possessed, or transported the firearm. 62 F.3d at 605–06; *see United States v. Williams,* 588 F.2d 92 (4th Cir.1978).

On the other hand, "willfully," especially in a statute in which Congress simultaneously uses "knowingly,"[6] connotes a more deliberate criminal purpose, sometimes to the point of requiring a specific intent to violate the law. *Ratzlaf v. United States,* —— U.S. ——, ——, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994). It is a "word of many meanings," *id.* at ——, 114 S.Ct. at 659 (quotation omitted), and generally means at least " 'consciousness of the act but not ... consciousness that the act is unlawful.' " *Id.* at ——, 114 S.Ct. at 664 (Blackmun, J., dissenting) (quoting *Cheek v. United States,* 498 U.S. 192, 209, 111 S.Ct. 604, 614, 112 L.Ed.2d 617 (1991) (Scalia, J., concurring)). Here, we are asked to interpret it modestly, by requiring bare knowledge of the single fact that separates Forbes' gun purchases from the hundreds of otherwise-identical lawful purchases that happen

every day. In sum, then, Congress' inclusion of "willful" in § 924(a)(1)(D) supports our conclusion.

■ There are also practical reasons why Congress would make this distinction in the required *mens rea* between § 922(g)(1) and § 922(n). One of the glories of our freedom is that no one may be convicted of a crime without notice of the charge and either a plea of guilty or presence at trial. *See Crosby v. United States,* —— U.S. ——, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993) (trial *in absentia* is impermissible unless defendant was present at the trial's commencement). A person simply cannot be convicted without knowing that the machinery of the state is attempting to punish him for a specific misdeed. An ex-felon who possesses a gun may well not understand the word "felony" or many other legal aspects of the process that led to his conviction, but he cannot credibly assert ignorance of the historical *fact* of his conviction. Requiring proof of anything more than this historical fact risks enshrining ignorance of the law as a defense.

In stark contrast, secrecy is the hallmark of investigations, grand jury proceedings, and sometimes indictments themselves, which are routinely sealed when public knowledge of their return might prejudice a continuing investigation. *See* Fed.R.Crim.P. 6(e)(4). Even in the ordinary case, where the indictment is made public when it is issued, there is almost always some delay between its issuance and the indicted person's knowledge of it. Under the instruction given by the district court in this case, a person named in a sealed indictment could unwittingly subject himself to five years in federal prison by purchasing a gun. We do not lightly presume that Congress intended such a result.

In sum, then, our holding in *Langley* is not inconsistent with our holding today.

---

**5.** The changes wrought in §§ 922 and 924 by the Firearms Owners' Protection Act, Pub.L. 99–308, 100 Stat. 449 (1986), are discussed at length in *Langley* and need not be so discussed here.

**6.** As we explained in *Langley,* 62 F.3d at 605, Congress deliberately chose to impose the "will-

ful" and "knowing" labels on different firearms offenses as a compromise between the positions of lobbyists for gun owners and of officials at the Treasury Department.

### C.

Because the jury was not instructed on an essential element of the § 922(n) crime, constitutional error occurred. We conclude below, however, that this error was harmless beyond a reasonable doubt. Inasmuch as this conclusion rests on the peculiar interrelationship of the counts with which Forbes was tried, we turn for a moment to Forbes' challenge to his § 922(a)(6) convictions.

### III.

Title 18 U.S.C. § 922(a)(6), which prohibits the making of false statements to licensed firearms dealers, expressly contains a *mens rea* element,[7] and the district court correctly instructed the jury. On these two convictions, Forbes makes a straight sufficiency of the evidence challenge under the familiar *Jackson v. Virginia*[8] standard—whether, if we view the evidence in the light most favorable to the government, we can conclude that any reasonable trier of fact could have found the elements of the crime established beyond a reasonable doubt.

■ This issue is fairly close. There is no direct evidence that Forbes had actual knowledge of the pending indictment. However, the jury was given the "ostrich" instruction (knowledge may be inferred from deliberate avoidance of learning the truth), and this sort of "knowledge" would be sufficient if proved. *United States v. Hester*, 880 F.2d 799, 802 (4th Cir.1989).

In *Hester*, the defendant had been arraigned and had appeared with counsel at preliminary hearings, so it was easy for the court to conclude that there was sufficient evidence that he"knew" his statement was false when he answered "no" to the "under indictment" question on the ATF form. Here, we just have evidence that Forbes had been told that he could be indicted at some point in the future. On the other hand, ten full months had passed since he had talked to his lawyer, and he had failed to keep his lawyer informed of where to find him. His own statement to the ATF agent admits that he hesitated to answer the indictment question, and that he answered "no" only because he had not personally appeared before the grand jury. In sum, the jury could easily have found that Forbes was aware that he had likely been indicted, and he deliberately chose to answer "no" rather than to pick up the telephone and find out for sure from his lawyer. The evidence supporting the § 922(a)(6) convictions was therefore sufficient.

### IV.

We now return to whether the error in the § 922(n) instructions was harmless.

■ The Sixth Amendment's right to trial by jury includes a right to have the jury make every factual finding essential to a conviction. *Sullivan v. Louisiana*, —— U.S. ——, —— – ——, 113 S.Ct. 2078, 2080–2081, 124 L.Ed.2d 182 (1993). Failure to instruct the jury that it must make an essential finding is therefore a constitutional error, and we must reverse the conviction unless the error is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Our inquiry is not complete if we merely assess the evidence and conclude that any jury would surely have found the missing element proved. Such analysis would be tantamount to directing a verdict for the prosecution, a power judges lack "no matter how overwhelming the evidence." *Sullivan*, —— U.S. at ——, 113 S.Ct. at 2080 (citing *Sparf v. United States*, 156 U.S. 51, 105–106, 15 S.Ct. 273, 294–295, 39 L.Ed. 343 (1895)).

---

7. The statute reads (emphasis added):
 (a) It shall be unlawful—...
 (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, *knowingly* to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or mis-

represented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter[.]

8. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

 Instead, we must set aside the conviction unless we can say beyond a reasonable doubt that the jury *actually* made the finding that the Sixth Amendment requires it to make.

> The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.

*Sullivan,* —— U.S. at ——–——, 113 S.Ct. at 2081–2082. *See Yates v. Evatt,* 500 U.S. 391, 404, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991) (unconstitutional burden-shifting instruction is harmless only if "the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the [unconstitutional] presumption"), *overruled in part on other grounds, Estelle v. McGuire,* 502 U.S. 62, 72 n. 4, 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385 (1991).

 It follows from this strict rule that failing to instruct the jury on an essential element will rarely be harmless. But even the rare bird appears occasionally, and this case is it.

 In returning verdicts of guilty on the § 922(a)(6) counts, Forbes' jury found beyond a reasonable doubt that he knew his statement—"I am not under indictment"—was false. It could not possibly have made this finding without also finding that he knew the truth—he was under indictment. Inasmuch as this latter finding is all that the missing instruction would have called for, we can be certain that the error was harmless. *See Langley,* 62 F.3d at 610–13 (Phillips, J., concurring in the judgment).

The convictions are affirmed.

*AFFIRMED.*