UNITED STATES of America,
Plaintiff–Appellee,

v.

William Calvin JOHNSON,
Defendant–Appellant.

No. 94–5740.

United States Court of Appeals,
Fourth Circuit.

Argued July 13, 1995.

Decided Dec. 6, 1995.

**ARGUED:** David Scott Bracken, Greenberg, Bracken & Tran, Alexandria, Virginia, for Appellant. John Thomas Martin, Assistant United States Attorney, Office of the United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Gerard J. Sexton, Special Assistant United States Attorney, Office of the United States Attorney, Alexandria, Virginia, for Appellee.

Before NIEMEYER, HAMILTON, and MOTZ, Circuit Judges.

Reversed and remanded for a new trial by published opinion. Judge HAMILTON wrote the opinion, in which Judge DIANA GRIBBON MOTZ joined. Judge NIEMEYER wrote a dissenting opinion.

## OPINION

HAMILTON, Circuit Judge:

William Calvin Johnson (Johnson) appeals his convictions for armed credit union robbery, *see* 18 U.S.C.A. § 2113(a), (d) (West Supp.1995) and § 2 (West 1969), and using a firearm during and in relation to a crime of violence, *see* 18 U.S.C.A. § 924(c)(1) (West Supp.1995) and § 2. For reasons that follow, we reverse Johnson's convictions and remand for a new trial.

## I.

On April 5, 1994, Johnson was indicted on one count of armed credit union robbery, *see* 18 U.S.C.A. § 2113(a), (d) and § 2, and one count of using a firearm during and in relation to a crime of violence, *see* 18 U.S.C.A. § 924(c)(1) and § 2. With regard to the robbery count, Count I, the indictment alleged that on or about March 4, 1994, Johnson and two other individuals willfully took by "force, violence and intimidation" from the persons and presence of Lisa Fouts, Diane Lewis and others $43,383.85 in money "belonging to and in the care, custody, control, management and possession of the Arlington Schools Federal Credit Union" (ASFCU) in Falls Church, Virginia. (J.A. 7). The indictment alleged that the deposits of the ASFCU were insured by the National Credit Union Share Insurance Fund. The indictment further alleged that in committing the robbery of the ASFCU Johnson assaulted and put in jeopardy the lives of two persons by the use of a handgun. With regard to the firearm count, Count II, the indictment alleged that Johnson and two other individuals knowingly, willfully and unlawfully used a handgun during and in relation to their robbery of the ASFCU as alleged in Count I.

Johnson was tried before a jury in a one-day trial on June 20, 1994. During the presentation of the government's case-in-chief, the government presented evidence with respect to all elements of the crime of armed credit union robbery, including the federally insured status of the ASFCU. In this regard, James Rauer, the manager of the ASFCU, testified that the ASFCU was insured by the National Credit Union Administration through the National Credit Union's Share Insurance Fund. As further evidence of ASFCU's federally insured status, the government introduced into evidence a document entitled "Certificate of Proof of Insured Status." In this document, dated June 2, 1994, the signatory certified and attested that he was the Region II Deputy Regional Director of the National Credit Union Administration and had official custody of its records for Region II. The signatory further certified that the ASFCU was chartered by the National Credit Union Administration on December 20, 1951, pursuant to the Federal Credit Union Act, 12 U.S.C.A. § 1757 (West 1989), and that on January 4, 1971, the accounts of the ASFCU became insured by the National Credit Union Share Insurance Fund pursuant to Title II of the National Credit Union Act, 12 U.S.C.A. § 1781 (West 1989). The signatory further certified that the accounts remained so insured through June 2, 1994, the date of the certificate. The document was signed before a notary public. Johnson objected to the admission of the certificate into evidence on grounds of hearsay, but the district court overruled his objection. Although Johnson did not offer any contrary evidence regarding the federally insured status of the ASFCU, he, nevertheless, did not stipulate to or concede that the ASFCU was federally insured.

After both parties had rested their cases, the district court instructed the jury on the law it was to apply. During these instructions, the district court read Count I as charged in the indictment, explained that this count was drawn from a provision of the United States Code, and then instructed the jury, in pertinent part, as follows:

You are told that the [ASFCU] is a credit union within the terms of that statute.

Four essential elements are required to be proved in order to establish the offense charged in count one:

The act or acts of taking or aiding and abetting the taking from the person or presence of another money belonging to or in the care, custody, control, management, or possession of a credit union.

Second, the act or acts of taking, aiding, and abetting the taking of such money by

force and violence or by means of intimidation.

Third, the act or acts of assaulting or aiding and abetting the assaulting or putting in jeopardy the life of any person by the use a dangerous weapon or device while engaged in stealing such money from the credit union, as charged, and, third (sic), the doing of such acts willfully.

(J.A. 75–76). Johnson objected to the district court conclusively instructing the jury that the ASFCU was a credit union within the statute and moved for a mistrial on the ground that the federally insured status of the ASFCU was a "factual matter for the jury to find," and the instruction, therefore, "improperly instructed [the jury] not to analyze that factual basis." (J.A. 85). The district court overruled the objection and denied the motion.

Subsequently, the jury found Johnson guilty of both counts in the indictment. The district court sentenced Johnson to 157 months' imprisonment and three years' supervised release. Johnson appeals.

## II.

Johnson seeks reversal of his conviction for armed credit union robbery on several grounds, including the ground that the district court violated his right under the Sixth Amendment to have a jury decide every factual finding essential to his conviction by instructing the jury that the ASFCU was a "credit union" within the terms of 18 U.S.C.A. § 2113(g), the sub-section of 18 U.S.C.A. § 2113 defining "credit union" for purposes of the statute. The government unequivocally concedes the instruction was error, but argues reversal of Johnson's conviction is not required because the error was harmless beyond a reasonable doubt.

## A.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." U.S. Const. amend. VI. This guarantee necessarily includes "the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'" *Sullivan v. Louisiana,* 508 U.S. 275, ——, 113 S.Ct. 2078, 2080, 124 L.Ed.2d 182 (1993). "Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the [government], no matter how overwhelming the evidence." *Id. See United States v. Piche,* 981 F.2d 706, 716 (4th Cir.1992) ("... a judge in a criminal case may not direct a verdict, even a partial verdict, for the government even though the evidence is overwhelming or even undisputed on the point.").

"The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *United States v. Gaudin,* —— U.S. ——, ——, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995). After the government has presented its evidence as to each element, and the defendant has had the opportunity to present a defense, if the defendant so chooses, the judge must instruct the jury on the law applicable to the issues raised at trial. *See United States v. White Horse,* 807 F.2d 1426, 1430 (8th Cir.1986). Under Sixth Amendment jurisprudence, the next two steps are strictly for the jury: (1) determining the facts as to each element of the crime, and (2) applying the law as instructed by the judge to those facts. *Id.* Consequently, a trial judge commits error of constitutional magnitude "when he instructs the jury as a matter of law that a fact essential to conviction has been established by the evidence, thus depriving the jury of the opportunity to make this finding." *Id.* at 1429.

The government concedes that the federally insured status of the credit union as defined in 18 U.S.C.A. § 2113(g)[1] is an essential element of the crime of armed credit union robbery. The government's concession

---

1. 18 U.S.C.A. § 2113(g) provides as follows:
   As used in this section the term "credit union" means any Federal credit union and any State-chartered credit union the accounts of which are insured by the National Credit Union Administration Board, and any "Federal credit union" as defined in section 2 of the Federal Credit Union Act.

is consistent with our jurisprudence. *See United States v. Gallop*, 838 F.2d 105, 111 (4th Cir.), *cert. denied*, 487 U.S. 1211, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *United States v. Wingard*, 522 F.2d 796, 797 (4th Cir.1975), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 792, 46 L.Ed.2d 648 (1976). Thus, in order to have convicted Johnson of armed credit union robbery, the jury was required to make a factual finding that the ASFCU was federally insured within the meaning of 18 U.S.C.A. § 2113(g). The record establishes that the district court denied the jury this opportunity by clearly and conclusively instructing the jury that "the [ASFCU] is a credit union within the terms of the statute." (J.A. 75.). The government concedes that the district court's instruction was erroneous. We agree.

### B.

■ We now turn to the government's contention that the district court's error in instructing the jury on the conclusiveness of an essential element of armed credit union robbery was harmless beyond a reasonable doubt. *See* Fed.R.Crim.P. 52(a), *see also Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Before we accept the government's invitation to apply harmless error analysis to the error in this case, we must satisfy ourselves that such an error is susceptible to harmless error review.

In *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Supreme Court addressed the issue of whether a constitutionally deficient reasonable-doubt instruction is subject to harmless error review. The Court began its analysis from the premise that most constitutional errors are subject to harmless error review, but some errors "will always invalidate the conviction." *Id.* at ——, 113 S.Ct. at 2081. The question before the Court in *Sullivan* was simply in which category did the error belong.

The Court next turned its attention to the *Chapman* harmless error standard. The *Sullivan* Court explained that the harmless error inquiry under *Chapman* "is not what effect the constitutional error might general-

ly be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." *Id.* Thus, appellate courts must "look[ ] ... to the basis on which 'the jury *actually rested* its verdict.' " *Id.* (quoting *Yates v. Evatt*, 500 U.S. 391, 404, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991)). In other words, the inquiry:

> is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be— would violate the jury-trial guarantee.

*Sullivan*, 508 U.S. at —— – ——, 113 S.Ct. at 2081–82.

With *Chapman* properly understood, the Court next addressed whether the constitutionally deficient reasonable-doubt instruction was susceptible to a *Chapman*-type analysis. The Court held that such an error was not amenable to such an analysis. *Id.* at ——, 113 S.Ct. at 2082. In reaching this holding, the Court reasoned that the entire premise of harmless error review under *Chapman* was absent: "There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate." *Id.* According to the Supreme Court, the error vitiated all the jury's findings, and only pure speculation regarding what the jury would have done absent the error was left for the reviewing court. *Id.* In reiterating the Sixth Amendment's requirement that a verdict of guilty must rest on an actual jury finding of guilty, the Court admonished appellate courts that "speculation about a hypothetical jury's action" does not satisfy the requirement, "or else directed verdicts for the State would be sustainable on appeal...." *Id.*

For the same reasons the Supreme Court held the error in *Sullivan* was not subject to harmless error review, we hold the error in the case before us is not subject to harmless error review. Analogous to the jury in *Sullivan* not making the essential findings of fact necessary to support the verdict, the jury in the case before us never made an independent finding as to the federally insured status of the ASFCU; the jury was conclusively instructed that the ASFCU was a credit union within the meaning of 18 U.S.C.A. § 2113(g) and was not instructed that the ASFCU's federally insured status was an element of the crime on which it needed to make a finding. Because we are not left with any evidence that the jury may have considered independent of the district court's mandatory presumption, at most, we can conclude that the "jury *would surely have found* [Johnson] guilty." *Sullivan*, 508 U.S. at ——, 113 S.Ct. at 2082. However, according to the *Sullivan* Court, this "is not enough" to bring the error within *Chapman* 's rubric; rather to fall within *Chapman* 's rubric, we must be able to conclude that "the jury's actual finding of guilty ... *would surely not have been different* absent the constitutional error." *Id.* To hold otherwise would be to engage in the type of speculation and hypothesizing censured by the Supreme Court in *Sullivan*. In sum, we hold harmless error review of the error presented in the case before us is unavailable.

## C.

We are careful to note that our holding today does not foreclose the possibility of harmless error review when the court has instructed the jury as to a mandatory presumption regarding an element of the offense. Under certain circumstances, such an error is amenable to harmless error review. For example, in *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (per curiam), the Supreme Court remanded a case for harmless error review in which the judge had erroneously instructed the jury that a mandatory presumption arose as to one element if the jury found certain predicate facts. The Court stated that if on remand, the lower court found that "no rational jury could find the predicate acts but

fail to find the fact presumed," then the error would be harmless. *Id.* at 267, 109 S.Ct. at 2421.

A case following *Carella, United States v. North*, 910 F.2d 843 (D.C.Cir.1990), *modified*, 920 F.2d 940 (D.C.Cir.1990), *cert. denied*, 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991) is also instructive. There, the United States Court of Appeals for the District of Columbia conducted harmless error review of an erroneous mandatory presumption instruction. In *North*, the defendant had been charged with aiding and abetting the obstruction of a congressional inquiry, *see* 18 U.S.C.A. § 1505 (West Supp.1995). *North*, 910 F.2d at 892. In order to have found the defendant guilty of this crime, the government bore the burden of proving: (1) an "inquiry or investigation [was] being had by either House, or any committee of either House or any joint committee of the Congress," 18 U.S.C.A. § 1505; (2) the defendant knew of the pending inquiries; (3) endeavored to obstruct them; and (4) did so with requisite criminal intent, *see North*, 910 F.2d at 893. The district court instructed the jury "as a matter of law that congressional inquiries were pending and that Congress was authorized to inquire into arms sales [to Iran] and Contra assistance, both of which were relevant and material issues.... You need only deliberate regarding the other three elements [of 18 U.S.C. § 1505]...." *Id.* at 892 (quoting J.A. 635) (alteration in original).

The court held this instruction was error, but nonetheless, held the error was harmless because the court concluded that "no rational jury could find that North knew of the pending congressional investigation, endeavored to obstruct it, and did so with specific corrupt intent without concomitantly finding that the investigation was pending in the first place." *North*, 910 F.2d at 894. Thus, the court in *North* necessarily found the jury had independently found the presumed fact. In contrast to *North*, the erroneous instruction in the case before us did not call for a mandatory presumption once the jury had found certain predicate facts. Indeed, such an instruction would have been illogical because the federally insured status of the ASFCU

had absolutely no relation to the other essential elements of armed credit union robbery. *See* 2 Devitt, Blackmar and O'Malley, *Federal Jury Practice and Instructions,* Section 49.06 (4th ed. 1990).

Similar to *Carella* and *North,* in *United States v. Forbes,* 64 F.3d 928 (4th Cir.1995), we conducted a harmless error review of a failure to instruct on an essential element of the offense. There, Forbes had been convicted of two counts of knowingly making a false statement in order to purchase a firearm, *see* 18 U.S.C.A. § 922(a)(6) (West Supp. 1995), and two counts of receiving a firearm while under indictment, *see* 18 U.S.C.A. § 922(n) (West Supp.1995). *Id.* at 930. With respect to the two counts charging Forbes with receiving a firearm while under indictment, the district court refused to instruct the jury, as Forbes had requested, that in order to find him guilty, the jury had to find that he knew he was under indictment when he received the firearm. *Id.* at 932. On appeal, Forbes contended the district court's refusal to give his requested instruction amounted to constitutional error. We agreed, but held the error was harmless. In reaching this conclusion, we stated as follows:

> In returning verdicts of guilty on the § 922(a)(6) counts, Forbes' jury found beyond a reasonable doubt that he knew his statement—"I am not under indictment"—was false. It could not possibly have made this finding without also finding that he knew the truth—he was under indictment. Inasmuch as this latter finding is all that the missing instruction would have called for, we can be certain that the error was harmless.

*Id.* at 935. The error in *Forbes* was amenable to harmless error review because, although the jury did not make the necessary finding (knowledge of indicted status) in its consideration of the § 922(n) counts, it did make the *identical* finding in its consideration of the § 922(a)(6) counts. Here, unlike *Forbes,* the jury was not given another instruction under which it could have made a finding that would, in effect, have been the same as finding the ASFCU was federally insured, and, for that reason, harmless error review is inappropriate.

The critical distinction between our case and *Sullivan* on the one hand and *Carella, North,* and *Forbes* on the other is obvious. The errors in *Carella, North,* and *Forbes* allowed the appellate courts to conclude that "the jury's actual finding of guilty ... *would surely not have been different* absent the constitutional error," *Sullivan,* 508 U.S. at ——, 113 S.Ct. at 2082, and, therefore, *Chapman* could be applied. In contrast, the errors in our case and *Sullivan* could not permit the courts to reach such a conclusion, rather, at most, the courts could conclude that the "jury *would surely have found* [the defendant] guilty ....," *Sullivan,* 508 U.S. at ——, 113 S.Ct. at 2082, and, therefore the *Chapman* analysis is inapt.

### III.

■ Next, Johnson asserts that his conviction for using a firearm during and in relation to a crime of violence (armed credit union robbery as charged in Count One of the indictment), *see* 18 U.S.C.A. § 924(c)(1), must also be reversed because the erroneous instruction conclusively establishing the ASFCU's federally insured status fatally affected the district court's instruction regarding the firearm count. We agree. In order to convict a defendant of the crime of using a firearm during and in relation to a crime of violence, *id.,* the government bears the burden of proving beyond a reasonable doubt, among other things, that the defendant committed the crime of violence. *See United States v. Nelson,* 27 F.3d 199, 201 (6th Cir. 1994). Therefore, when instructing the jury as to the § 924(c)(1) offense, the district court must either instruct the jury as to all the essential elements of the underlying crime or refer to its previous instruction of those elements with regard to the underlying crime. Here, the district court used the last approach, and thus, merely made reference to the elements of armed credit union robbery, *see* 18 U.S.C.A. § 2113, as it had previously instructed the jury. Therefore, the erroneous instruction with regard to the federally insured status was incorporated by reference into the § 924(c)(1) instruction. For the same reasons the error was not subject to harmless error review with respect

to the armed credit union robbery conviction, it is not subject to harmless error review with respect to the firearm count. We, accordingly, reverse Johnson's conviction under § 924(c)(1).

## IV.

In conclusion, we hold the district court erred by instructing the jury that the federally insured status of the ASFCU, an essential element of the crime of armed credit union robbery, had been conclusively established. Furthermore, we hold the error in this case is not subject to harmless error review. Accordingly, we reverse Johnson's conviction for armed credit union robbery. We also reverse his conviction for use of a firearm during and in relation to a crime of violence because we hold that it is premised upon the same error which is not subject to harmless error review. The case is, therefore, remanded for a new trial.[2]

*REVERSED AND REMANDED FOR A NEW TRIAL.*

NIEMEYER, Circuit Judge, dissenting:

In March 1994, William Johnson entered the Arlington Schools Federal Credit Union in Falls Church, Virginia, and, threatening use of a handgun, robbed it of over $43,000. He was convicted of armed robbery of a federally-insured credit union in violation of 18 U.S.C. § 2113(a) & (d) and use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1). The court sentenced him to 157 months imprisonment.

Subsection (a) of § 2113 makes it a federal offense to rob or attempt to rob "any bank, credit union, or any savings and loan association." Subsection (g) defines "credit union" to mean a federally-chartered credit union or any state-chartered credit union, the accounts of which are federally insured.

At Johnson's trial, a manager of the Arlington Schools Federal Credit Union testified that the credit union is federally insured. In addition, the government introduced into evidence a "certificate of proof of insured status" which certified that Arlington Schools Federal Credit Union was federally char-

tered and was federally insured. While Johnson objected to the introduction of the certificate as hearsay, an objection which the court overruled, Johnson did not dispute the incontrovertible fact that Arlington Schools Federal Credit Union was federally insured. Accordingly, when instructing the jury on the elements of the offense, the district court stated, "You are told that the Arlington Schools Federal Credit Union is a credit union within the terms of that statute [18 U.S.C. § 2113(a)]."

Johnson argues that he has a Sixth Amendment right to a jury trial on every element essential to a conviction and that the district court denied him that right when it, in essence, directed a verdict on the question of whether the credit union was federally insured.

The government argues that whether Arlington Schools Federal Credit Union was federally insured, as defined in the statute, relates to a jurisdictional prerequisite and is more a question of law on which the court could properly instruct the jury than a question of fact. The government argues alternatively that if the instruction was error, it was harmless error. I find the government's arguments persuasive, particularly in view of the fact that no one in this case questions the assertion that Johnson's trial served as a reliable vehicle for determining whether he was guilty or innocent of robbing the Arlington Schools Federal Credit Union in March 1994.

All issues about Johnson's criminal conduct were submitted to the jury and, based on that evidence, the jury convicted him. The evidence of the insured status of the credit union, which did not relate to Johnson's conduct or the necessary *mens rea,* was not only undisputed, but incontrovertible. Whether such a question is a jurisdictional one or a peripheral technical matter is not material— it did not prevent the jury from considering the criminality of all of Johnson's actions in robbing the credit union. It is beyond all doubt that Johnson was properly convicted. To require reversal because the jury was advised by the court that the credit union

---

**2.** Given our reversal of Johnson's convictions, we     need not address his other assignments of error.

which Johnson robbed was a federal credit union would, in my judgment, promote public disrespect for the criminal process and thereby undermine one of the principal purposes of the harmless error doctrine. *See Arizona v. Fulminante*, 499 U.S. 279, 308, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991).

While it may be clear that the district court committed error of a constitutional dimension, it is clearer still that the error was of no consequence and therefore harmless. Indeed, in contexts very similar to this one, dealing with issues more significant to the grant of a fair trial, the Supreme Court has applied principles of harmless error. The list, which is collected in *Fulminante*, 499 U.S. at 306–07, 111 S.Ct. at 1263, includes application of the harmless error doctrine to cases where the jury instruction contained an erroneous conclusive presumption; the jury instruction misstated an element of the offense; the jury instruction contained an erroneous rebuttable presumption; the court failed to instruct the jury on the presumption of innocence; and the court admitted identification evidence or statements of a nontestifying codefendant in violation of the Confrontation Clause. Only in a few cases has the Court recognized that the infraction can never be treated as harmless error, and in each of those cases, the constitutional deprivation was a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. at 1265. To be *per se* harmful error, the error must "transcend[ ] the criminal process." *Id.* at 311, 111 S.Ct. at 1265.

The majority's decision, establishing a *per se* rule that the error here cannot be harmless, finds in the error a degree of influence that it did not have, and wrongly focuses on the "virtually inevitable presence of immaterial error" rather than on determining whether the trial is rendered fundamentally unfair. *See Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986). If a defendant is tried without counsel, or is tried before a biased judge, or is tried on the wrong burden of proof, the entire proceeding is undermined and unfair. *See id.*; *Sullivan v. Louisiana*, 508 U.S. 275, ——, 113 S.Ct.

2078, 2082, 124 L.Ed.2d 182 (1993). In such instances the entire proceeding is infected with the error and cannot be redeemed. But that is not the case before us. Here, *all* the facts relating to the criminality of Johnson's conduct were fairly and properly presented to the jury. Only a peripheral, technical requirement of the statute, that which distinguishes the conduct as a federal crime, was given to the jury with the instruction that it had been established, i.e., was not disputed. There is no question that the trial, as conducted, reliably served as a vehicle for determining whether Johnson was guilty or innocent. *See Rose*, 478 U.S. at 577–78, 106 S.Ct. at 3105–06.

Moreover, the majority's holding cannot be squared with our recent decision in *United States v. Forbes*, 64 F.3d 928 (4th Cir.1995). In *Forbes*, the defendant was charged with two counts of knowingly making a false statement in order to purchase a firearm, in violation of 18 U.S.C. § 922(a)(6), and two counts of receiving a firearm while under indictment, in violation of 18 U.S.C. § 922(n). At trial, the district court failed to instruct the jury that the government was required to prove that the defendant *knew* that he was under indictment in order to establish a violation of 18 U.S.C. § 922(n). We held that this was constitutional error because the jury was not instructed on an essential *mens rea* element of the offense. But we went on to conclude that the error was amenable to a harmless error analysis. *Id.* at 934. We observed that even though the jury was not instructed on the necessary *mens rea* under 18 U.S.C. § 922(n), the jury necessarily found that fact:

> In returning verdicts of guilty on the § 922(a)(6) counts, Forbes' jury found beyond a reasonable doubt that he knew his statement—"I am not under indictment"—was false. It could not possibly have made this finding without also finding that he knew the truth—he was under indictment. Inasmuch as this latter finding is all that the missing instruction would have called for, we can be certain that the error was harmless.

*Id.* at 934–935. While the reason we gave there for finding harmless error differs from

that which I would apply here, *Forbes* nevertheless illustrates that the failure to instruct the jury on an essential element of an offense is not *per se* prejudicial.

In concluding that the error in Johnson's case was harmless, I would hold that where all the facts relating to the defendant's criminal conduct were fairly and properly presented to the jury and the only element taken from the jury was a peripheral jurisdictional or technical requirement not in dispute, harmless error analysis is appropriate. To distinguish between criminally operative conduct and peripheral technical matters, I would rely on the jurisprudence that defines the conduct for which *mens rea* is required. Thus, I would hold that conduct for which *mens rea*—intent or wilfulness—must be proved defines core criminal conduct, the evidence of which in every case must also go to the jury. On the other hand, elements relating to jurisdiction, interstate commerce, federal connections for banks, and the federal status of victims, for which *mens rea* is not required, fall at the periphery of core conduct, and court error in failing to submit a factual question about them to the jury would be subject to a harmless error analysis. *See United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). In *Feola,* the defendants were charged with assaulting federal officers. In instructing the jury, the district court stated that the jury was not required to conclude that the defendants were aware that the victims were federal officers. In affirming, the Supreme Court noted that no one in the case questioned that the status of the victim as a federal officer is "jurisdictional." *Id.* at 676, 95 S.Ct. at 1259–60. In a footnote explaining the significance of categorizing a requirement as jurisdictional, the Court stated:

> The significance of labeling a statutory requirement as "jurisdictional" is not that the requirement is viewed as outside the scope of the evil Congress intended to forestall, but merely that the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.

*Id.* at 676 n. 9, 95 S.Ct. at 1260 n. 9. Thus, the Court held that the criminal conduct for which *mens rea* is required included only the acts the defendant undertook in committing the assault and not the fact that the victims were federal officers. *Id.* at 686, 95 S.Ct. at 1265. I would apply the same principles in determining the scope of when harmless error analysis may be applied to jury instructions on the elements of a crime.

Because Johnson's liability under 18 U.S.C. § 2113 does not turn on whether he knew the financial institution was federally insured, I would subject the court's instruction on that issue to a harmless error analysis.

Since I conclude that the district court's error was harmless, I would affirm.