**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

WILLIAM MICHAEL LOVERN, a/k/a
Michael Lovern, Sr.,
       *Defendant-Appellant.*

No. 01-4728

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Claude M. Hilton, Chief District Judge;
Robert E. Payne, District Judge.
(CR-00-75)

Argued: April 5, 2002

Decided: June 14, 2002

Before WIDENER and WILLIAMS, Circuit Judges, and
Walter K. STAPLETON, Senior Circuit Judge of the
United States Court of Appeals for the Third Circuit,
sitting by designation.

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Judge Widener and Senior Judge Stapleton joined.

## COUNSEL

**ARGUED:** Robert James Wagner, Assistant Federal Public
Defender, Richmond, Virginia, for Appellant. Kenneth Lee West-

nedge, Jr., Student Counsel, Sara Elizabeth Flannery, Special Assistant United States Attorney, Richmond, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Federal Public Defender, Richmond, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Richmond, Virginia, for Appellee.

---

### OPINION

WILLIAMS, Circuit Judge:

William Lovern appeals his conviction under 26 U.S.C.A. § 7212(a) (West 1989), for impeding, intimidating, or obstructing an employee of the United States acting in an official capacity under Title 26 of the United States Code. Lovern claims that he did not make a "threat" satisfying § 7212's requirements and that the employee he was charged with threatening was not acting pursuant to any authority granted under Title 26. Because we conclude that Lovern's statements were attempts to intimidate a United States employee within the scope of § 7212(a) and that the employee in question was performing a duty under Title 26, we affirm.

I.

Beginning in 1998, Lovern repeatedly called the Richmond, Virginia office of the Internal Revenue Service (IRS) to complain about his taxes. Lovern voiced a variety of complaints in his calls, including his belief that a tax levy of over $300,000 had been wrongly placed by the IRS on certain of his assets. Eventually, IRS officials in the Richmond office instructed Lovern not to call there anymore, referring him instead to the Richmond office of the Treasury Inspector General for Tax Administration (TIGTA). Thereafter, Lovern regularly called TIGTA. Because of the perceived threatening nature of some of Lovern's calls, TIGTA made the decision in June of 1999 to record incoming calls from him.

During a call Lovern made to the Richmond office of TIGTA on July 15, 1999, Lovern spoke to Special Agent Charles Venini of TIGTA. The Government entered a recording of the call into evidence

at trial and played the call for the jury. The following exchanges occurred during the conversation between Lovern and Venini:

Venini: You are to write a letter to [the Deputy Director of the IRS for Virginia] in reference to all IRS tax issues that you have. The IRS will not accept any phone calls from you.

Lovern: Oh, you don't have a choice, because I'm going to shove it right up you [sic] ass.

Venini: Ok.

Lovern: And the day you lay down your badge, I'm going to be standing there.

Venini: Ok.

Lovern: Thank God you have a badge, son.

. . . .

Lovern: Now, Chuck, you take your quote instructions and stick 'em where the sun don't shine.

Venini: Ok.

Lovern: Because you have no authority.

Venini: All right. You are aware of what I just told you, right.

Lovern: No, I am aware of nothing.

Venini: Ok.

Lovern: I am aware of nothing, because you have no authority.

Venini: Would you like for me to repeat it again?

Lovern:    No, because you have no authority. When it
           comes to my personal taxes, you have no author-
           ity.

Venini:    I didn't say anything about your personal taxes.

Lovern:    That's exactly what this is all about my personal
           taxes.

Venini:    Ok.

Lovern:    That's the only [thing] about [it] Chuck and if
           you tortuously interfere with my personal busi-
           ness again I am going to forget you are wearing
           a badge.

J.A. at 312-14.

Lovern was first indicted on February 23, 2000 in the Eastern District of Virginia. He was charged initially with three misdemeanor counts of violating § 7212(a), which generally prohibits impeding, intimidating, or obstructing a United States employee in the performance of official duties under Title 26. The Government subsequently filed three superseding indictments, the last of which charged nine counts, including bank fraud, conspiracy to commit bank fraud and wire fraud in addition to the § 7212(a) violations. Lovern moved to dismiss the counts charging § 7212(a) violations on the ground that the government employees identified in the indictment were not acting in an official capacity under Title 26, as § 7212(a) requires. The trial court denied Lovern's motion but severed the counts charging § 7212(a) violations from the remainder of the indictment. A trial proceeded on those counts.[1]

---

[1]The Government subsequently superseded the remaining (non-§ 7212(a)) charges in the nine-count indictment with an eighteen-count indictment, which included charges of bank fraud, conspiracy to commit bank fraud, wire fraud, and money laundering. All of these counts were eventually dismissed.

The jury found Lovern not guilty of all counts save one, the count charging him with a § 7212(a) violation in connection with the conversation referenced above. Lovern was sentenced to time served[2] and a special assessment of $25. He timely noted this appeal.

## II.

Lovern raises two principal arguments on appeal. First, he claims the district court erred in denying his motions to dismiss the indictment and at the close of trial for a directed verdict in his favor on the ground that Venini was not acting in an official capacity under Title 26 at the time of the exchange in question. Second, he claims the district court erred in instructing the jury that Venini was acting in an official capacity under Title 26 because that is an element of a § 7212(a) offense, and therefore, is to be found by the jury.[3] We address these arguments in turn.

## A.

Section 7212(a) states that "[w]hoever corruptly or by force or threat of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title . . ." shall be guilty of a crime. 26 U.S.C.A. § 7212(a) (West 1989). Lovern asserts that Venini, a Special Agent in TIGTA's Richmond office, was not and indeed could not have been "acting in an official capacity

---

[2]Lovern was released on bond after being indicted initially, but violated the terms of his bond by calling TIGTA. The district court thereafter ordered him detained until trial.

[3]Lovern also argues that his conviction should be reversed because he did not attempt to impede, intimidate, or obstruct Venini within the meaning of § 7212(a). Any "threats" he made during the conversation in question were, he asserts, not "true threats," but rather hyperbole not amounting to an attempt to intimidate Venini. In light of the jury's conclusion that Lovern did attempt to intimidate or impede Venini in the performance of his official duties, and given that several of Lovern's statements were plainly threatening (e.g., "if you tortuously interfere with my personal business again I'm going to forget you're wearing a badge," J.A. at 314), we conclude that this contention has no merit.

under [Title 26]" when Lovern threatened him. He points out that the primary source of TIGTA's authority is Title 5, which gives TIGTA agents the authority to protect IRS employees from threats and investigate any such threats. *See* 5 U.S.C.A. app. 3 § 8D(k)(1)(C) (West Supp. 2001) (stating that TIGTA "shall be responsible for protecting the Internal Revenue Service against external attempts to corrupt or threaten employees of the Internal Revenue Service"). Thus, Lovern contends, Venini was acting in an official capacity during the July 15 conversation, but not an official capacity under Title 26.

Lovern is correct that much of TIGTA's authority is derived from Title 5. Under 26 U.S.C.A. § 7803(d)(3)(B), however, TIGTA is required to "establish and maintain a toll-free telephone number for taxpayers to use to confidentially register complaints of misconduct by Internal Revenue Service employees . . . ." 26 U.S.C.A. § 7803(d)(3)(B) (West Supp. 2001). This section plainly authorizes TIGTA agents to receive complaints, via telephone, from taxpayers regarding wrongful conduct by IRS employees. It is beyond question that Agent Venini was receiving complaints registered by Lovern during the conversation on July 15. *See* J.A. at 311 (statement by Lovern that "I'm a victim of tax fraud . . . so far as my tax lien."). Lovern himself stated that the conversation was "all about my personal taxes." J.A. at 314.

While it is no doubt true that Venini was talking to Lovern during the July 15 conversation to protect the employees of the IRS's Richmond office from Lovern's apparently threatening phone calls to them, he was also providing Lovern an opportunity to register complaints of IRS misconduct. It is apparent that Congress was aware that perceived misconduct by the IRS will in some cases be a source of significant agitation and distress to the complaining party. TIGTA, as the organization with the responsibility for investigating fraud, abuse, and misconduct within the IRS, *see* 5 U.S.C.A. app. 3 § 8D(h) (requiring TIGTA to "exercise all duties and responsibilities of an Inspector General of an establishment with respect to the Department of the Treasury and the Secretary of the Treasury on all matters relating to the Internal Revenue Service"), has been designated as the proper recipient of such complaints under 26 U.S.C.A. § 7803(d)(3)(B). That an employee of TIGTA listening to such complaints may be simultaneously protecting IRS employees from threats

under Title 5 does not mean the employee is not acting under Title 26. Accordingly, we conclude that during the July 15 conversation Venini was acting within the scope of the authority granted TIGTA under Title 26, specifically § 7803(d)(3)(B).[4]

B.

Lovern next argues that the district court erred in instructing the jury that Venini was acting in the scope of his official duties under Title 26 during the July 15 conversation with Lovern because official action under Title 26 is an element of the charged offense, and accordingly it had to be proven to the jury beyond a reasonable doubt. Count Six of the indictment, on which Lovern was found guilty, alleged that Lovern "did by threats of force endeavor to intimidate and impede Special Agent Charles Venini of the Treasury Inspector General for Tax Administration, Washington Field Division, while acting in his official capacity under Title 26, United States Code . . . ." J.A. at 42-43. In its charge to the jury, the district court said "you are instructed as a matter of law that . . . Charles Venini [was] acting in [his] official capacity under Title 26 at the times alleged in this indictment." Supp. J.A. at 32.

"The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995). "[I]n determining what facts must be proved beyond a reasonable doubt the . . . legislature's definition of the ele-

---

[4]Judge Stapleton also concludes that the undisputed evidence indicates that Venini was exercising authority conferred by Title 26 as well as authority conferred by Title 5. Lovern repeatedly called numerous IRS employees to argue and complain about the position the IRS was taking with respect to his own taxes and those of others. He called so frequently and talked so long that it interfered with the IRS employees' ability to do their jobs. As a result, Venini was assigned to take calls that would otherwise have gone to these employees and to advise Lovern that all future communication between himself and the IRS would have to be in writing. The purpose of Lovern's calls was no different after the designation of Venini as the receiver of those calls, and Venini was performing the responsibilities of an IRS employee when he took them.

ments of the offense is usually dispositive." *McMillan v. Pennsylvania*, 477 U.S. 79, 85 (1986). A trial judge therefore "commits error of constitutional magnitude when he instructs the jury as a matter of law that a fact essential to conviction has been established by the evidence, thus depriving the jury of the opportunity to make this finding." *United States v. Johnson*, 71 F.3d 139, 142-43 (4th Cir. 1995) (concluding that a district court's charge to the jury that a credit union robbed by the defendant was a *federal credit union*, as required by the statute of conviction, constituted error of constitutional dimension because that fact was an element of the offense that the defendant was entitled to have the jury find).

Section 7212(a) states that a person must "endeavor[ ] to intimidate or impede an[ ] officer or employee of the United States acting in an official capacity under [Title 26] . . . ." 26 U.S.C.A. § 7212(a). With this language, Congress has made the victim's status as an officer or employee acting in an official capacity under Title 26 an element of at least some § 7212(a) offenses.[5] *Cf., e.g.*, *United States v. Linn*, 438 F.2d 456, 458 (10th Cir. 1971) (noting that "[o]ne of the elements of the offense proscribed by [18 U.S.C.A.] § 111 [criminalizing assault of federal employees while engaged in official duties] is that the federal officer assaulted be engaged in the performance of his official duties and not on a frolic of his own"). As in *Johnson*, the court here took from the jury the responsibility of determining an element of the offense in question. *See Johnson*, 71 F.3d at 141. The district court thus erred in instructing the jury as a matter of law that Venini was acting in the scope of his official duties under Title 26. *See Gaudin*, 515 U.S. at 522-23.

---

[5]There is an offense defined under § 7212(a) that does *not* require that the victim of the threat be an officer or employee of the United States or that he be acting in an official capacity, but Lovern was not charged in the count of conviction with that offense. *See* 26 U.S.C.A. § 7212(a) (stating, in the "omnibus clause" that one who "by force or threats of force . . . obstructs or impedes, or endeavors to obstruct or impede, the due administration of [Title 26]" shall be guilty of an offense). The Government does not argue that the evidence adduced at trial was sufficient to convict Lovern under the "omnibus clause" of § 7212(a); the Government thus rests on the proposition that Lovern was properly convicted under the "intimidating or impeding an officer" clause of § 7212(a).

The conclusion that the district court erred, however, does not end our inquiry. Rule 52(a) of the Federal Rules of Criminal Procedure provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." While this Rule by its terms applies to all errors where a proper objection is made at trial, the Supreme Court has recognized a limited class of fundamental constitutional errors that "defy analysis by 'harmless error' standards." *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). For all other constitutional errors, however, "reviewing courts must apply Rule 52(a)'s harmless-error analysis and must disregar[d] errors that are harmless beyond a reasonable doubt."[6] *Neder v. United States*, 527 U.S. 1, 7 (1999) (internal quotation marks omitted).

The Supreme Court held in *Neder* that failure to instruct the jury on an element of the charged offense is an error subject to harmless error review. *Id.* at 9 (noting that "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence" (emphasis in original)). We thus consider below whether the error affected Lovern's substantial rights.

In conducting our review under the harmless error standard, we ask "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* at 15 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). The government bears the burden of demonstrating that the error was harmless. *United States v. General*, 278 F.3d 389, 395 n.2 (4th Cir. 2002). The Government argues here that the unrebutted evidence adduced at trial demonstrated that Venini was performing an official duty under Title 26 when Lovern threatened him.[7] In light of our conclusion in Part II.A, *supra*, and the evidence at trial, we conclude that this contention is correct. Venini plainly was acting within the scope of 26 U.S.C.A. § 7803(d)(3)(B) when he spoke to Lovern on July 15; Lovern was

---

[6]Lovern properly objected at trial to the district court's instruction to the jury on the issue of whether Venini was acting in an official capacity under Title 26 during the July 15 phone conversation.

[7]The Government argued in its brief that the district court's jury instruction was not error, but it noted at oral argument that harmless error review would apply to any error that occurred.

voicing complaints about the conduct of IRS officials, and Venini was receiving them. *Cf.* J.A. at 311 (statement by Lovern that "I'm a victim of tax fraud . . . so far as my tax lien"). Although Lovern contested the element's not being submitted to the jury, he did not "raise[ ] evidence sufficient to support a contrary finding . . ." to that reached by the judge. *Neder*, 527 U.S. at 19. Indeed, Lovern's entire argument at trial on this element was premised on the erroneous legal supposition that nothing in Title 26 granted Venini authority to act in any capacity. Thus, the error in this case did not contribute to the verdict obtained.

## III.

For the reasons set forth above, the judgment of the district court is affirmed.

*AFFIRMED*