UNITED STATES of America,
Plaintiff–Appellee,

v.

Lewis R. LAW, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

MINE MANAGEMENT,
INCORPORATED, Defendant–Appellant.

Nos. 92–5075, 92–5076.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1992.

Decided Sept. 25, 1992.

Publication Ordered Nov. 9, 1992.

Victor Alfred Barone, Hurt & Barone, Charleston, W.Va. (Charles E. Hurt, Hurt & Barone, on the brief), for defendants-appellants.

Sanford Benjamin Bryant, Asst. U.S. Atty., Charleston, W.Va. (Michael W. Carey, U.S. Atty., Phillip B. Scott, Asst. U.S. Atty., on the brief), for plaintiff-appellee.

Before HALL and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

PER CURIAM:

Lewis R. Law and Mine Management, Inc. appeal their felony convictions for violating the Clean Water Act, 33 U.S.C. § 1319(c)(2). ("CWA") by knowingly discharging polluted water into Wolf and Arbuckle Creeks in Fayette County, West Virginia without a National Pollution Discharge Elimination System ("NPDES") permit. Finding no reversible error, we affirm.

### I

In 1977 Lewis R. Law formed Mine Management, Inc. ("MMI"), a West Virginia corporation, to engage in various coal-related business activities. From MMI's inception, Law was its sole officer and stockholder. In 1980, MMI purchased 241 acres from the New River Company ("New River"). The conveyance included an aged coal preparation plant, masses of coal refuse ("gob piles"), and a water treatment system. New River installed this system in the late 1970s to collect, divert, treat, and discharge runoff and leachate from a gob pile that covered a large portion of the subject property.

The water treatment system was designed to reduce the acidity and metal content of drainage from the gob pile. The system comprised a collection pond near Wolf Creek, a pump, and piping that channeled the collected water over a ridge and through a hopper, which dispensed soda ash briquettes to raise the pH of the water. Iron and manganese then precipitated out as the water flowed through two settling ponds before its discharge into Arbuckle Creek.

The water treatment system was subject to an NPDES permit when MMI purchased the site. Despite repeated notice, however, neither MMI nor Law ever applied for, or was granted, an NPDES permit authorizing discharges into Wolf or Arbuckle Creeks. Due to MMI's failure to operate the water treatment system effectively, acid mine drainage discharged from the collection pond into Wolf Creek, or from the second settling pond into Arbuckle Creek, on at least 16 occasions between March, 1987 and November 15, 1991. Law and MMI were indicted for violating the CWA, 33 U.S.C. § 1319(c)(2), tried to a jury, and found guilty. Law was sentenced to two years in prison and Law and MMI were fined $80,000.00 each.

### II

Law and MMI challenge their convictions on two grounds. They argue, first, that the trial court instructed the jury erroneously on the law governing their case and, second, that the court abused its discretion in barring evidence regarding New River's alleged policy of concealing preexisting environmental problems from prospective purchasers of its property. We reject both grounds of appeal.

### A

Under the CWA, it is a felony to (a) knowingly (b) discharge (c) a pollutant (d) from a point source (e) into a navigable water of the United States (f) without, or in violation of, an NPDES permit. *See* 33 U.S.C. §§ 1311(a), 1319(c)(2), 1342(a); *Arkansas v. Oklahoma,* —— U.S. ——, ——, 112 S.Ct. 1046, 1054, 117 L.Ed.2d 239 (1992); *see also* 33 U.S.C. § 1362(12) (defining "discharge" as *"any* addition of *any* pollutant to navigable waters from *any* point source") (emphases added). Appellants do not contest that they added untreated acid mine drainage to Wolf and Arbuckle Creeks from the collection pond and the settling pond, respectively, knowing that they lacked the requisite NPDES permit.

In challenging the trial court's jury instructions, however, appellants contend

that the CWA imposes liability only upon the *generators* of pollutants discharged into navigable waters of the United States, and not upon persons over whose property preexisting pollutants are passed along to flow finally into navigable waters. They contend that the trial court erred by refusing to instruct the jury that no responsibility lies for discharging pollutants that originate beyond one's own property,[*] and by instructing the jury instead that,

> ... it is not a defense to the charge that the water discharged from the point source came from some other place or places before its discharge from the point source. It is not a defense to this action that some, or all, of the pollutants discharged from a point source originated at places not on the defendants' property. This is because the offense consists of the knowing discharge of a pollutant from a point source into a water of the United States [without, or in violation of, an NPDES permit]. J App 489–90

Appellants rely for this contention upon decisions in *National Wildlife Federation v. Consumers Power Co.,* 862 F.2d 580 (6th Cir.1988), *National Wildlife Federation v. Gorsuch,* 693 F.2d 156 (D.C.Cir.1982), and *Appalachian Power Co. v. Train,* 545 F.2d 1351 (4th Cir.1976). In these cases, operators of power plants and dams diverted, then released, navigable waters of the United States. The appellate courts held that where "pollutants" existed *in the waters of the United States* before contact with these facilities, the mere diversion in the flow of the waters did not constitute "additions" of pollutants to the waters. *Consumers Power,* 862 F.2d at 585–86; *Gorsuch,* 693 F.2d at 174–75; *Train,* 545 F.2d at 1377–78. Appellants sought to square their case with these decisions by showing that the headwaters of Wolf and Arbuckle Creeks originated, and were pol-

luted, before entering their water treatment system, so that, like the power plant and dam operators, they had no duty to remove preexisting pollutants.

■ With respect to pollutants preexisting in the waters of the United States, where the flow of the waters is merely diverted, the trial court's jury instructions did not state the law with strict accuracy ("[i]t is not a defense ... that some, *or all,* of the pollutants ... originated at places not on the defendants' property"). The error was harmless, however, because, as a matter of law, appellants' water treatment system was not part of the waters of the United States; to the contrary, the system constituted a point source.

Unlike the river and lake waters diverted in *Consumers Power, Gorsuch,* and *Train,* appellants' water treatment system collected runoff and leachate subject to an NPDES permit under the CWA, and therefore was not part of the "waters of the United States." *See* 40 C.F.R. 122.2(g) ("Waste treatment systems, including treatment ponds and lagoons designed to meet the requirements of CWA ... are not waters of the United States."). The origin of pollutants in the treatment and collection ponds is therefore irrelevant. The proper focus is upon the discharge from the ponds into Wolf and Arbuckle Creeks.

Appellants' treatment system is also unlike the power plants and dams at issue in *Consumers Power, Gorsuch,* and *Train* because it clearly satisfies the statutory definition of "point source." *See* 40 C.F.R. 122.2 (a "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, ... conduit, ... discrete fissure, ... [or] *landfill leachate collection system* ... from which pollutants are or may be discharged" (emphasis added); "discharge" includes "surface runoff which is collected or

---

[*] Defendants' Instructions 9A, 10, and 14 would have required the jury to find liability only if defendants were shown to generate the pollutants at issue. Defendants' Instructions No. 11A, 12, and 13 would have required the jury to find that defendants, as owners solely of the property's surface, had no duty to treat waters contaminated by the property's subsurface. Defendants' Instruction 15, which was omitted from the Joint Appendix, apparently tracked Instructions 11A, 12, and 13. *See* Appellants' Brief at 32.

channelled by man"); *see also Sierra Club v. Abston Constr. Co.*, 620 F.2d 41, 47 (5th Cir.1980) (collection and channelling of run-off constitutes a point source). Because appellants' treatment system was, as a matter of law, not part of the waters of the United States but instead a point source, the trial court's instructions to the jury were without prejudicial error.

### B

■ Appellants also claim that the trial court abused its discretion in excluding evidence concerning New River's alleged policy of concealing existing environmental problems from prospective purchasers. Under the foregoing analysis of the CWA, the relevant *mens rea* issue was Law's knowledge as of March, 1987, that the ponds were discharging pollutants into the creeks without, or in violation of, an NPDES permit. Appellants' attempts to cross-examine former New River employees Louis Briguglio and Don Reedy regarding the alleged policy were therefore properly excluded as irrelevant. Law's testimony regarding his conversations with Briguglio were properly excluded as hearsay.

### III

For the foregoing reasons, we affirm the convictions of Lewis R. Law and Mine Management, Inc. on all counts.

AFFIRMED.