**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5036

CHANG HAN CHEN, a/k/a #34,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5042

CHONG CHAO CHEN, a/k/a #21,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CR-94-156-S)

Argued: April 8, 1997

Decided: October 31, 1997

Before WILKINSON, Chief Judge, and RUSSELL, WIDENER,
HALL, MURNAGHAN, WILKINS, NIEMEYER, HAMILTON,
LUTTIG, WILLIAMS, MICHAEL, and MOTZ, Circuit Judges,
sitting en banc.

_____

Affirmed by published opinion. Judge Williams wrote the opinion in
which Chief Judge Wilkinson and Judges Russell, Widener, Hall,

Murnaghan, Wilkins, Niemeyer, Hamilton, Luttig, Michael, and Motz joined. Judge Williams wrote a concurring opinion, in which Chief Judge Wilkinson and Judges Russell, Wilkins, Niemeyer, and Luttig joined.

_____

**COUNSEL**

**ARGUED:** Fred Warren Bennett, CATHOLIC UNIVERSITY LAW SCHOOL, Washington, D.C., for Appellants. Andrew George Warrens Norman, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Daniel W. Stiller, Baltimore, Maryland; Michael L. Soshnick, Mineola, New York; James C. Savage, LAW OFFICES OF JAMES SAVAGE, P.A., Rockville, Maryland, for Appellants. Lynne A. Battaglia, United States Attorney, Virginia B. Evans, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

_____

**OPINION**

WILLIAMS, Circuit Judge:

We granted en banc review in this case to determine whether the convictions and sentences of Chong Chao Chen ("Chong") and Chang Han Chen ("Chang"), members of an alien-smuggling ring, should stand.**1** Chong and Chang were convicted by a jury of using or carrying a firearm, or aiding and abetting the same, during a crime of violence, see 18 U.S.C.A. §§ 2, 924(c)(1) (West Supp. 1997). On appeal, they contend that their § 924(c)(1) convictions must be vacated because the district court misinstructed the jury in light of the Supreme Court's decision in Bailey v. United States, 116 S. Ct. 501

_____

**1** Argument before a three-judge panel was held on October 29, 1996. Before an opinion in the case was published, a member of the court sua sponte requested a poll on whether this case should be reheard en banc. A majority of judges in active service voted to rehear the case and ordered supplemental briefing. Argument before the full court was heard on April 8, 1997.

2

(1995), which, subsequent to their convictions, clarified the meaning of "use" under the statute. By an equally divided court we affirm their § 924(c)(1) convictions.

In addition to being convicted of violating § 924(c)(1), Chong and Chang were convicted of conspiracy to kidnap, see 18 U.S.C.A. § 1201(c) (West 1984); kidnapping, see 18 U.S.C.A. §§ 2 (West 1969), 1201(a) (West 1984 & Supp. 1997); hostage taking, see 18 U.S.C.A. §§ 2, 1203 (West Supp. 1997); conspiracy to interfere with commerce by threats or violence, see 18 U.S.C.A. § 1951(a) (West Supp. 1996); conspiracy to transport and harbor aliens, see 18 U.S.C.A. § 371 (West 1966 & Supp. 1997); alien harboring, see 8 U.S.C.A. § 1324(a)(1)(A)(iii) (West Supp. 1997), 18 U.S.C.A. § 2; and collecting extension of credit by extortionate means, see 18 U.S.C.A. §§ 2, 894 (West 1976 & Supp. 1997). Chong also was convicted of bringing in aliens, see 8 U.S.C.A.§ 1324(a)(1)(A)(I) (West Supp. 1997), 18 U.S.C.A. § 2; and transporting aliens, see 8 U.S.C.A. § 1324(a)(1)(A)(ii) (West Supp. 1997), 18 U.S.C.A. § 2. For these crimes, and for their § 924(c)(1) convictions, the district court sentenced Chong to 322 months imprisonment and Chang to 168 months imprisonment. Chong and Chang claim that they are entitled to new trials because of numerous procedural errors made by the district court, and to new sentences because the district court erroneously increased their offense levels under various provisions of the Sentencing Guidelines. We reject their contentions and affirm their convictions and sentences.

I.

In January 1994, approximately 105 Chinese nationals from the People's Republic of China boarded a Taiwanese ship headed for the United States. The Chinese nationals had agreed to pay from $20,000 to $28,000 each to be smuggled into the United States by members of an alien-smuggling ring. The Chinese nationals were told by the smugglers that they could pay this "transportation" fee over time, and that after arriving in the United States they immediately would be free to work and earn money. After spending nearly 70 days at sea, the Chinese nationals were loaded onto a fishing vessel and smuggled into the United States at Cape May, New Jersey. From there, they were taken to Prince George's County, Maryland, where they were

confined in two safehouses -- one in Upper Marlboro and one in Mitchelville.

In March 1994, agents of the Federal Bureau of Investigation (FBI) and the Immigration and Naturalization Service (INS) learned from wiretaps that numerous Chinese nationals were being held hostage in the United States. On April 5, 1994, pursuant to valid search warrants, FBI and INS agents raided three residences in Prince George's County, Maryland, and one in Queens, New York. As a result of the searches, the FBI and INS learned that the smugglers were holding the Chinese nationals hostage and forcing them to raise ransom money from relatives in China.

The smugglers confined most of the hostages in a house in Mitchelville, Maryland, locking them in a squalid basement and holding them captive at gunpoint for 15 days. Armed guards routinely beat the hostages and otherwise intimidated them in an effort to get them to raise ransom money. To escape the brutality of the guards, the hostages raised money by telephoning their relatives in China and begging them to borrow money from Chinese loansharks. At trial, hostages testified that it was only when they arrived at the Mitchelville house that they realized they would be confined and tortured until their "transportation" fee had been paid in full. Forty-five of the hostages were able to raise the ransom money and were driven by the smugglers to a safehouse in Queens. From there, they disappeared into the community.

At the Mitchelville house, the remaining hostages were forced to sleep in rows on the floor in the basement, to urinate in a can, to remain silent at all times, and to stay in the basement unless escorted by an armed guard. The floor was littered with mats, pieces of plywood, sheet rock, clothing, and blankets, and the windows were covered with black plastic and boarded up. During the search, agents discovered handcuffs and a cache of weapons that contained loaded sawed-off shotguns and semiautomatic pistols. The agents also discovered ledgers detailing both the names of the hostages and how much each owed or had paid to the smugglers.

Appellant Chong, a permanent resident alien of the United States, was one of the leaders of the smuggling ring. When the hostages

came into the United States, he was in charge of the guards at the safehouse in Upper Marlboro, and he later managed the guards at the house in Mitchelville. Appellant Chang, who was from the same Chinese village as Chong, was himself one of the Chinese nationals smuggled in as part of the venture. He paid only a part of the ransom he owed and agreed to work as an armed guard at the Mitchelville house under Chong's supervision to satisfy the remainder of his debt. The jury determined that Chong was guilty of all counts charged in the indictment and that Chang was guilty of all counts except bringing in and transporting illegal aliens.

## II.

Chong and Chang argue that their convictions for using or carrying a firearm during a crime of violence, see 18 U.S.C.A. § 924(c)(1), must be vacated because the district court misinstructed the jury in light of Bailey v. United States, 116 S. Ct. 501 (1995). By an equally divided court, we affirm Appellants' convictions for violating § 924(c)(1). Chief Judge Wilkinson, and Judges Russell, Wilkins, Niemeyer, Luttig, and Williams vote to affirm the convictions. Judges Widener, Hall, Murnaghan, Hamilton, Michael, and Motz vote to reverse the convictions.

## III.

Chong and Chang also argue that they are entitled to new trials because numerous procedural errors were made by the district court. First, they argue that they are entitled to new trials because the Government failed to comply with Brady v. Maryland , 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C.A. § 3500 (West 1985), by not providing a transcript copy of a witness's prior testimony in a juvenile proceeding.[2] We disagree. The Government did not have custody of a transcript of the sealed juvenile proceedings. Under the Jencks Act, the Government is not required to produce a copy of a witness's prior statements not in its possession. See 18 U.S.C.A. § 3500(b) (requiring

_____

[2] The witness, Bao Jin Chen, who testified for the Government against Chong and Chang, also testified in the previous trial of five juvenile members of the alien-smuggling ring. See United States v. Juvenile Male, 74 F.3d 526 (4th Cir.), cert. denied, 116 S. Ct. 2558 (1996).

Government to produce any statement of the witness in the possession of the United States).

Second, Chong and Chang argue that the district court erred in permitting the testimony of codefendants who sat through part of the trial prior to reaching plea agreements with the Government, and in failing to give a cautionary instruction to the jury regarding codefendant testimony. After carefully reviewing the record and the parties' briefs, hearing argument on this issue, and applying the proper standard of review, we reject Appellants' contentions. See United States v. Blevins, 960 F.2d 1252, 1260-61 n.3 (4th Cir. 1992) (rejecting challenge to admission of testifying codefendant's guilty plea); United States v. Gambino, 926 F.2d 1355, 1364 (3rd Cir. 1991) (stating that mistrial is not required when codefendant changes plea and testifies against remaining defendants); United States v. Herrera, 832 F.2d 833, 836-37 (4th Cir. 1987) (stating that mistrial is not necessarily required when codefendant changes plea during trial).

Finally, Chong and Chang argue that the Government exercised its peremptory challenges in a discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79 (1986), by striking three black prospective jurors. Our careful review of the record, however, reveals that the Government's reasons for striking the prospective jurors were race-neutral. See id. at 89 (noting that the demeanor of a potential juror provides an acceptable basis for exercising a peremptory challenge); United States v. Contreras-Contreras, 83 F.3d 1103, 1105-06 (9th Cir.) (holding that prior jury service is a race-neutral explanation for a peremptory strike), cert. denied, 117 S. Ct. 259 (1996); United States v. Darden, 70 F.3d 1507, 1531-32 (8th Cir. 1995) (holding that lack of experience is a race-neutral explanation for a strike), cert. denied, 116 S. Ct. 1449 (1996). Accordingly, we affirm Appellants' remaining convictions.

IV.

Chong and Chang also challenge their sentences. Both argue that the district court erroneously increased their offense levels three points because some of the Chinese nationals held hostage were minors. See U.S. Sentencing Guidelines Manual § 2A4.1(b)(6) (1995). Chong contends that the district court erroneously increased

6

his offense level two points because a hostage suffered serious bodily injury. See U.S.S.G. § 2A4.1(b)(2)(B). Chang argues that the district court erred in refusing to authorize a mental health examination prior to his sentencing. Such an examination, he argues, would have established that he was eligible for a downward departure under the Sentencing Guidelines. See U.S.S.G. § 5K2.12 (coercion and duress). Chang also complains that the district court erroneously increased his offense level six points for demanding ransom. See U.S.S.G. § 2A4.1(b)(1). After carefully reviewing the record and the parties' briefs, hearing argument on these issues, and applying the proper standard of review, we conclude that Appellants' challenges to their sentences are without merit. See generally United States v. Davis, 19 F.3d 166, 171 (5th Cir. 1994) (affirming enhancement for "serious bodily injury"); United States v. Graham, 946 F.2d 19, 22 (4th Cir. 1991) (holding that a district court's refusal to depart from the Sentencing Guidelines is unreviewable); United States v. Gonzales, 996 F.2d 88, 93-94 (5th Cir. 1993) (discussing enhancement for ransom demand); United States v. Rocha, 916 F.2d 219, 242-44 (5th Cir. 1990) (same). We therefore affirm their sentences.

V.

Appellants' convictions for using a firearm during a crime of violence in violation of 18 U.S.C.A. § 924(c)(1) are affirmed by an equally divided court. We affirm their remaining convictions, and we affirm their sentences.

AFFIRMED

WILLIAMS, Circuit Judge, concurring:

Appellants' § 924(c)(1) convictions have been affirmed by the vote of an equally divided court. Six members of the Court have voted, without explanation, to reverse Appellants' § 924(c)(1) convictions. I write separately to explain why I am firmly convinced that the facts of this case and controlling Supreme Court (and Fourth Circuit) precedent compel the affirmance of Appellants' § 924(c)(1) convictions, and why I have voted accordingly. Chief Judge Wilkinson, and Judges Russell, Wilkins, Niemeyer, and Luttig join this opinion.

7

A nearly unanimous Supreme Court stated recently, in a manner that leaves no room for doubt, that a district court's misdescription of an essential element of a crime in its instructions to the jury is amenable to harmless-error analysis. See Johnson v. United States, 117 S. Ct. 1544, 1550 (1997) (citing Yates v. Evatt, 500 U.S. 391 (1991); Carella v. California, 491 U.S. 263 (1989); Pope v. Illinois, 481 U.S. 497 (1987); Rose v. Clark, 478 U.S. 570 (1986)). To conclude otherwise in this en banc case would require me to ignore a clear holding of the Supreme Court. This I refuse to do.

I.

Chong and Chang argue that their § 924(c)(1) convictions for using or carrying a firearm during a crime of violence must be vacated because the district court misinstructed the jury in light of Bailey v. United States, 116 S. Ct. 501 (1995).[1] Chong and Chang, however, did not object to the instructions on § 924(c)(1) given to the jury. The Federal Rules of Criminal Procedure provide: "No party may assign as error any portion of the [jury] charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the

_____

[1] After initial briefing in this case was completed, but prior to oral argument before the panel, the Government submitted a letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure conceding "error with respect to Count 11 . . . in which the appellants were found guilty of using and carrying a firearm during the course of a crime of violence in violation of 18 U.S.C. § 924(c)." The Government made this concession in light of United States v. Hawthorne, 94 F.3d 118 (4th Cir. 1996), and United States v. Smith, 94 F.3d 122 (4th Cir. 1996), cases it believed were binding circuit precedent. Appellants suggest that this concession "is entitled to `great weight.'" (Appellants' Supp. Br. at 7.) The Government's concession, however, which was withdrawn subsequent to our decision to hear the appeal en banc, does not preclude independent review of the issue, see United States v. Stanfield, 109 F.3d 976, 984 n.5 (4th Cir. 1997) (refusing to reverse defendant's conviction despite Government's concession of error), or limit this Court's ability to reconsider the continuing vitality of Hawthorne and Smith in light of the Supreme Court's recent pronouncement in Johnson v. United States, 117 S. Ct. 1544, 1550 (1997) (reaffirming that jury misinstructions are amenable to harmless-error review).

grounds of the objection." Fed. R. Crim. P. 30. Nevertheless, under Federal Rule of Criminal Procedure 52(b), Courts of Appeals may notice, in their discretion, "[p]lain errors or defects affecting substantial rights," even though no objection was made. See Johnson v. United States, 117 S. Ct. 1544, 1548 (1997); United States v. Olano, 507 U.S. 725, 731-32 (1993). Therefore, review of Appellants' convictions must be for plain error under Rule 52(b).**2**

Rule 52(b) contains four elements that must be satisfied before an appellate court may notice an error not preserved by a timely objection: (1) the asserted defect in the trial proceedings must, in fact, be error; (2) the error must be plain; and (3) it must affect the substantial rights of the defendant. See Olano, 507 U.S. at 732. "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Johnson, 117 S. Ct. at 1549 (quotations omitted) (alteration in original).

A.

The first showing required by Rule 52(b) is that an error occurred in the proceedings below. See Olano, 507 U.S. at 732-33. The district court instructed the jury that Appellants did not need to actively employ a firearm to violate § 924(c)(1).**3** This expansive interpretation

_____

**2** In supplemental briefing and at oral argument, Appellants contended that the "Rule 52(b) `plain error' standard is inapplicable to [their] claims of § 924(c) instructional error." (Appellants' Supp. Br. at 9.) The Supreme Court, however, recently made clear that "it is . . . Rule [52(b)] which by its terms governs direct appeals from judgments of conviction in the federal system, and therefore governs this case." Johnson v. United States, 117 S. Ct. 1544, 1548 (1997); see also id. (stating that federal courts have "no authority" to create "out of wholecloth . . . an exception to" Rule 52(b)).

**3** The district court's instruction as to the "use" prong of the gun charge was as follows:

> Under this statute, to use a firearm means to have the firearm available in such a way that it furthered the commission of the crime of violence or was an integral part of its commission.

9

of "use" was consistent with the prevailing view in this Circuit that inactive use of a firearm formed a sufficient basis for upholding a conviction under the statute. See, e.g., United States v. Paz, 927 F.2d 176, 178-79 (4th Cir. 1991) (holding that a "weapon need not be brandished or displayed" but need only be "`present for protection and to facilitate the likelihood of success, whether or not it is actually used'" (quoting United States v. Brockington, 849 F.2d 872, 876 (4th Cir. 1988)). In Bailey, however, the Supreme Court held that the Government must show "active employment" to prove that a firearm was "used" in the manner contemplated by § 924(c)(1). See Bailey, 116 S. Ct. at 506. Active employment, the Supreme Court stated, "includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." Id. at 508. As a result, the district court's jury instruction on "use" was at odds with Bailey.4 Cf.

_____

> It is not necessary that the government prove the defendant fired or displayed the weapon or even that it was loaded. As long as the defendant had the firearm available to protect his criminal endeavor, if he needed to do so, that is sufficient to establish use of a firearm under this law.

(J.A. at 358.)

4 The district court also misinstructed the jury on the "carry" prong of § 924(c)(1). The court instructed the jury that it need find only that Appellants possessed a firearm to convict them under the "carry" prong of the statute. Specifically, the court instructed the jury that

> [c]arrying a firearm under this statute means to have it within your control, to have it available in such a way that it furthers the commission of a crime of violence or was an integral part of the commission of that crime.

> The defendant does not necessarily have to hold it physically. That is, to have actual possession of it on his person. If you find the defendant had dominion and control over the place where the firearm was located and had the power and intention to exercise control over it, you may find the government has proved that he carried it.

(J.A. at 358-59.)

Although the Bailey Court did not directly address the definition of "carry" under the statute, the Court clearly explained that "use" and

United States v. Hawthorne, 94 F.3d 118, 121 (4th Cir. 1996) (holding that the district court misinstructed the jury on the "use" prong of § 924(c)(1) in light of Bailey); United States v. Smith, 94 F.3d 122, 124-25 (4th Cir. 1996) (same). Thus, the district court committed error within the meaning of Rule 52(b).

B.

Second, it is necessary that the error that occurred during the trial be plain. See Olano, 507 U.S. at 734. "`Plain' is synonymous with `clear' or, equivalently, `obvious.'" Id. (citing United States v. Young, 470 U.S. 1, 17 n.14 (1985)). In cases "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal," as in this case, "it is enough that an error be `plain' at the time of appellate consideration." Johnson, 117 S. Ct. at 1549; cf. United States v. David, 83 F.3d 638, 645 (4th Cir. 1996) (holding that error is plain, even where not obvious at the time of trial, "where an objection at trial would have been indefensible because of existing law, but a supervening decision prior to appeal reverses that well-settled law").

Here, the instructions given to the jury, while plainly erroneous before us on appeal, were not plainly erroneous at the time of trial. Bailey, which was decided on December 6, 1995, clarified the meaning of "use" under § 924(c)(1) well after Appellants' trial, which concluded in October of 1994. At that time, the state of the law in this (and every other) Circuit was such that the district court's error in instructing the jury was not obvious. See, e.g. , Paz, 927 F.2d at 178-79 (inactive use of a firearm sufficient to support § 924(c)(1) conviction); Brockington, 849 F.2d at 876 (same); see also United States v.

_____

"carry" were distinct from each other and different from mere "possession." "[T]he inert presence of a firearm, without more, is not enough to trigger § 924(c)(1)." Bailey v. United States, 116 S. Ct. 501, 508 (1995). Thus, Bailey dictates that possession alone is not enough to support a conviction for "carrying." See United States v. Mitchell, 104 F.3d 649, 653 (4th Cir. 1997) (concluding "that the plain meaning of the term `carry' as used in § 924(c)(1) requires knowing possession and bearing, movement, conveyance, or transportation of the firearm in some manner" (emphasis added)). Consequently, the district court's "carry" instruction, like its "use" instruction, was erroneous.

11

Bailey, 36 F.3d 106, 113-14 (D.C. Cir. 1994) (en banc) (collecting cases), rev'd, 116 S. Ct. 501 (1995). Because "the law at the time of trial was settled and clearly contrary to the law at the time of appeal," Johnson, 117 S. Ct. at 1549, and because it is obvious error today to instruct a jury that it need not find that a defendant actively employed a firearm to convict him of "using" a firearm under § 924(c)(1), see Bailey, 116 S. Ct. at 506, Appellants satisfied the requirement of Rule 52(b) that the alleged error be "plain."**5**

C.

Third, it must also be shown that the error affected Appellants' substantial rights. See Olano, 507 U.S. at 734. The language "affecting substantial rights" "is the same language employed in Rule 52(a), and in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." Id. An error not affecting the outcome of the trial, i.e., a harmless error, does not affect a defendant's substantial rights and does not satisfy the third prong of plain-error analysis under Olano. See David, 83 F.3d at 647 (noting that errors "not susceptible to harmless error analysis [are] also exempt from the showing of prejudice required" by Olano's third prong); United States v. Floresca, 38 F.3d 706, 713 (4th Cir. 1994) (en banc) (stating that errors that "can never be harmless . . . must affect substantial rights").

1.

As the Olano court explained, however, "[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome . . . ." 507 U.S. at 735. For example, this Circuit has held that harmless-error review is unavailable if the jury was conclusively instructed on an essential element of the crime. See United States v. Johnson, 71 F.3d 139, 144 (4th Cir. 1995) (holding that a district court's conclusive instruction to the jury that it must find an essential element of the crime is an error not susceptible to harmless-error analysis); accord United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988) (holding that the harmless-error doctrine "does not

_____

**5** For similar reasons, the district court's carry instruction constitutes error that was "plain."

12

apply when the judge directs a partial verdict against the defendant by telling the jury that one element of the crime . . . has been proved beyond a reasonable doubt"). As a result, a district court's conclusive instruction to the jury that it must find an essential element of the crime satisfies Olano's third prong because such an instruction necessarily affects substantial rights.

This Circuit has also held that a district court's failure to instruct the jury on an element of the crime is an error not susceptible to harmless-error analysis. See United States v. Aramony, 88 F.3d 1369, 1387 (4th Cir. 1996) (holding that the district court's failure to instruct the jury on an essential element of the crime was not subject to harmless-error analysis), cert. denied, 117 S. Ct. 1842 (1997); see also United States v. Forbes, 64 F.3d 928, 935 (4th Cir. 1995) ("[F]ailing to instruct the jury on an essential element will rarely be harmless."). In Johnson, the Supreme Court called into question the continuing vitality of our holdings in Aramony and Forbes, stating that it "is by no means clear" that failing to instruct the jury on an essential element of the offense defies harmless-error analysis. See Johnson, 117 S. Ct. at 1550; see also United States v. Rogers, 94 F.3d 1519, 1525-26 (11th Cir. 1996) (holding that failure to instruct jury on essential element of crime is subject to harmless-error analysis), cert. granted, 117 S. Ct. 1842 (1997). However, the Johnson court did not expressly hold that such error is amenable to harmless-error review. See Johnson, 117 S. Ct. at 1550 (noting that "we need not decide that question"). As a result, in our Circuit at least, a district court's failure to instruct the jury on an element of the crime, like conclusively instructing the jury on an element, satisfies Olano's third prong. See David, 83 F.3d at 647 (stating "that the failure to instruct on an element of the crime, where the jury never made the constitutionally required findings, is within that `special category' of forfeited errors, and satisfies Olano's third prong"); United States v. Rogers, 18 F.3d 265, 268 (4th Cir. 1994) (holding "that th[e] failure to give an instruction on a required element of the crime is an error that affects substantial rights").

Here, however, Appellants do not argue that the district court conclusively instructed the jury or failed to instruct the jury on an essential element of the crime. Instead, Appellants argue that the district court misinstructed the jury concerning what the Government

13

must show to prove a violation of § 924(c)(1). Like Appellants, I am convinced that this is a case where the district court, in light of the Supreme Court's subsequent decision in Bailey, simply misdescribed one of the essential elements of § 924(c)(1). I am convinced that this is neither a case where the district court conclusively instructed the jury, nor a case where the district court failed to instruct the jury, on an essential element of the offense.

To prove a violation of § 924(c)(1), the Government must show two elements: (1) the defendant used or carried a firearm, and (2) the defendant did so during and in relation to a drug trafficking offense or crime of violence. See Smith v. United States, 508 U.S. 223, 227-28 (1993); United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997); United States v. Sloley, 19 F.3d 149, 152 (4th Cir. 1994). My review of the district court's charge to the jury reveals that the district court did not conclusively instruct the jury on either of these elements. Cf. Johnson, 71 F.3d at 144 (holding that "the jury was conclusively instructed that the ASFCU was a credit union within the meaning of 18 U.S.C.A. § 2113(g)," an essential element of the crime). At no time did the district court tell the jury that the Government had proven beyond reasonable doubt that Appellants used or carried firearms, or that such use or carrying occurred during and in relation to the underlying crime of violence.

Similarly, my review of the record reveals that the district court did not fail to charge the jury on an essential element of § 924(c)(1). The district court charged the jury on both elements of the crime, instructing the jury that the Government was required to prove (1) that "the defendant knowingly used or carried a firearm," and (2) that the defendant did so "during and in relation to the commission of the crime of violence as charged in [Counts] One, Two, Three, Four, or Ten." (J.A. at 358.) The Supreme Court in Bailey did not add an additional element to the crime of using or carrying a firearm during and in relation to a drug trafficking offense or a crime of violence. See Bailey, 116 S. Ct. at 501. Instead, the Court merely "clarif[ied] the meaning of `use' under § 924(c)(1)." Id. at 505. The district court therefore did not fail to instruct the jury on an essential element of § 924(c)(1). Cf. Aramony, 88 F.3d at 1383 (district court failed to instruct the jury on additional element of crime added by Supreme Court in United States v. Gaudin, 115 S. Ct. 2310 (1995)); David, 83

14

F.3d at 640-41 (same); United States v. Gray, 47 F.3d 1359, 1363 (4th Cir. 1995) (district court failed to instruct the jury on additional element of crime added by Supreme Court in Ratzlaf v. United States, 510 U.S. 135 (1994)); Rogers, 18 F.3d at 268 (same).

Thus, the district court simply misinstructed the jury on the requirements of § 924(c)(1). In United States v. Hawthorne, 94 F.3d 118 (4th Cir. 1996), and United States v. Smith, 94 F.3d 122 (4th Cir. 1996), this Circuit addressed whether a district court's misinstruction to the jury on the requirements of § 924(c)(1) required reversal. There, the analysis of whether the misinstruction was susceptible to harmless-error analysis consisted entirely of the following:

> If the jury is misinstructed -- or not instructed at all -- as to an essential element of the crime, we must set aside the defendant's conviction unless we can say, beyond a reasonable doubt, that the jury actually made the finding that inheres in the element. [United States v.]Aramony, 88 F.3d [1369, ]1386-87[ (4th Cir. 1996)]; United States v. Johnson, 71 F.3d 139, 143 (4th Cir. 1995); United States v. Forbes, 64 F.3d 928, 934-35 (4th Cir. 1995) . . . .

Hawthorne, 94 F.3d at 121; accord Smith, 94 F.3d at 124 (making same proposition and citing same cases). In so stating, the Hawthorne and Smith courts implied that a district court's misinstruction to the jury on an essential element of the crime, like a district court's failure to instruct on an essential element, is never amenable to harmless-error analysis.[6] However, none of the three authorities cited for that expansive proposition in fact establishes it.

_____

[6] The cases relied upon by United States v. Hawthorne, 94 F.3d 118 (4th Cir. 1996), and United States v. Smith , 94 F.3d 122 (4th Cir. 1996), state that a district court's failure to instruct the jury on an essential element of the crime may be amenable to harmless-error analysis, but only in the rare instance where "the reviewing court can be satisfied that the jury actually made an equivalent or identical finding pursuant to another instruction." United States v. Aramony, 88 F.3d 1369, 1387 (4th Cir. 1996) (citing United States v. Forbes, 64 F.3d 928, 935 (4th Cir. 1995)). Therefore, the Hawthorne and Smith courts' unexplained extension of this principle to cases of a district court's misinstruction to the jury sug-

15

The first of them, United States v. Aramony, 88 F.3d 1369 (4th Cir. 1996), does not establish that a district court's misinstruction is never amenable to harmless-error analysis. Instead, the case holds that a district court's failure to instruct on an essential element of the crime is not amenable to harmless-error review. See id. at 1387. Nowhere in Aramony did we suggest that a district court's misinstruction to the jury is not amenable to harmless-error analysis. In United States v. Johnson, 71 F.3d 139 (4th Cir. 1995), we held that a district court's conclusive instruction to the jury on an essential element of the crime could not be analyzed under the harmless-error standard. See id. at 143-44. Again, as in Aramony, nothing in Johnson suggested that harmless-error analysis is not appropriate when the district court misinstructs the jury. Finally, in United States v. Forbes, 64 F.3d 928 (4th Cir. 1995), we stated "that failing to instruct the jury on an essential element will rarely be harmless." Id. at 935. Nevertheless, we held that the failure to instruct in that case was harmless, stating that "even the rare bird appears occasionally, and this case is it." Id. Again, as in Aramony and Johnson, we did nothing to establish that harmless-error analysis is inappropriate in cases of jury misinstruction.

Thus, to the extent the statements in Hawthorne and Smith imply that a district court's misinstruction to the jury on an essential element of the crime is never amenable to harmless-error analysis, they were unexplained extensions of our holdings in Aramony, Johnson, and Forbes. More importantly, the statements, if so read, conflict with Supreme Court precedent, most notably the Supreme Court's recent decision in Johnson v. United States, 117 S. Ct. 1544 (1997). In Johnson, a nearly unanimous Supreme Court stated unequivocally that misinstructing the jury on an essential element of the offense, unlike conclusively instructing or failing to instruct the jury, is "an error which is subject to harmless error analysis." Johnson, 117 S. Ct. at 1550. In doing so, the Supreme Court merely affirmed its long-time

_____

gests, perhaps, that Hawthorne and Smith may be read to permit harmless-error review in cases where the jury actually makes an equivalent or identical finding pursuant to a properly-given instruction on a separate count. Such cases are, in my view, a rarity. Thus, Hawthorne and Smith, however read, plainly "imply" that a district court's misinstruction to the jury is "never" amenable to harmless-error analysis.

16

holding that a district court's misinstruction to the jury is susceptible to harmless-error review. <u>See Yates v. Evatt</u>, 500 U.S. 391 (1991) (applying harmless-error review to jury instruction containing erroneous mandatory presumption); <u>Carella v. California</u>, 491 U.S. 263 (1989) (same); <u>Pope v. Illinois</u>, 481 U.S. 497 (1987) (holding that misinstruction on essential element of crime was subject to harmless-error analysis); <u>Rose v. Clark</u>, 478 U.S. 570 (1986) (applying harmless-error review to jury instruction containing erroneous burden-shifting presumption); <u>see also Clemons v. Mississippi</u>, 494 U.S. 738 (1990) (noting that an unconstitutionally overbroad jury instruction at sentencing stage of capital case is subject to harmless-error review); <u>cf. California v. Roy</u>, 117 S. Ct. 337, 339 (1997) (holding in habeas case that jury misinstruction was not "structural error," and was to be analyzed by reviewing court under harmless-error standard).**7** The Supreme Court's decision in <u>Johnson</u>, then, by its

_____

**7** Our Circuit has also long held that a district court's misinstruction to the jury is susceptible to harmless-error review. <u>See, e.g.</u>, <u>United States v. Hairston</u>, 46 F.3d 361, 373 (4th Cir.) (holding in extortion case that imprecise quid pro quo instruction, if erroneous, was harmless), <u>cert. denied</u>, 116 S. Ct. 124 (1995); <u>United States v. Whittington</u>, 26 F.3d 456, 464 (4th Cir. 1994) (holding "that, even if the application of the willful blindness instruction to [the defendant] was error, . . . such error was harmless"); <u>United States v. Law</u>, 979 F.2d 977, 979 (4th Cir. 1992) (per curiam) (holding that although "the trial court's jury instructions did not state the law with strict accuracy," the error was harmless); <u>United States v. Borromeo</u>, 954 F.2d 245, 248 (4th Cir. 1992) (stating in RICO case where appellant argued that "this instruction is flawed," that "even if we were to interpret the instruction narrowly and find error, in our view it would be harmless error"); <u>United States v. Vogt</u>, 910 F.2d 1184, 1200 (4th Cir. 1990) ("We agree that the instruction was erroneous but hold that the error was harmless."); <u>United States v. LaRouche</u>, 896 F.2d 815, 832-33 (4th Cir. 1990) (holding that error, if any, in jury instruction was harmless in prosecution for conspiracy to defraud the IRS); <u>United States v. Wentz</u>, 800 F.2d 1325, 1326-27 (4th Cir. 1986) (holding that district court's misinstruction regarding value of stolen item under National Stolen Property Act, which erroneously referred to "replacement value less depreciation," was harmless error); <u>United States v. Davis</u>, 739 F.2d 172, 174-75 (4th Cir. 1984) (per curiam) (holding that any error in trial court's instructions concerning intoxication as a possible negation of specific intent was harmless); <u>United States v. Cohen</u>, 617 F.2d 56, 58 (4th Cir. 1980) (per curiam) (holding "that the challenged portion of the [erro-

17

terms, operates in our Circuit to overrule Hawthorne and Smith, and emphatically reaffirms that a district court's misinstruction to the jury on an essential element of the offense is subject to harmless-error analysis.**8** Accordingly, a district court's misinstruction to the jury

_____

neous] instruction did not prejudice defendant"); United States v. Baker, 611 F.2d 961, 964 (4th Cir. 1979) (holding that district court's misinstruction to jury did not "contain[ ] reversible error"); United States v. Cabbell, 427 F.2d 147, 148 (4th Cir. 1970) (per curiam) (stating that "we think the charge was not prejudicial" where "no objection was raised at trial" and there was "evidence abundantly establishing" defendant's guilt); cf. United States v. Eilertson, 707 F.2d 108, 110 (4th Cir. 1983) (per curiam) (reversing conviction and stating that"[w]hile the [erroneous] instruction itself may not have required reversal," the United States Attorney's conduct "cannot be overlooked"); United States v. Gresko, 632 F.2d 1128, 1135 (4th Cir. 1980) (reviewing misinstruction for harmless error and determining that "[i]n view of the bare sufficiency of the Government's proof on this issue, there is a substantial likelihood that the error was prejudicial"); United States v. Heyman, 562 F.2d 316, 319 (4th Cir. 1977) (concluding that the district court's misinstruction on the definition of obscenity was not harmless error); but see United States v. Hawthorne, 94 F.3d 118 (4th Cir. 1996) (holding that "[i]f the jury is misinstructed . . . as to an essential element of the crime, we must set aside the defendant's conviction"); United States v. Smith, 94 F.3d 122 (4th Cir. 1996) (same).

**8** At oral argument it was suggested that misinstructing the jury on an essential element of the offense is, as a practical matter, indistinguishable from failing to instruct the jury on an essential element, an error which defies harmless-error analysis in our Circuit. See United States v. Aramony, 88 F.3d 1369, 1387 (4th Cir. 1996). If the district court improperly instructed the jury on an essential element of the offense, the argument goes, then the court, in effect, failed to instruct the jury on all the elements. Under this logic, every misinstruction on an essential element would constitute a failure to instruct and would therefore defy harmless-error analysis.

In Johnson v. United States, 117 S. Ct. 1544, 1550 (1997), the Supreme Court recognized that these two instructional errors -- misinstructing the jury on an essential element of the offense and failing to instruct the jury on an element -- can "be analogized." 117 S. Ct. at 1550; see also California v. Roy, 117 S. Ct. 337, 339 (1997) ("The spe-

18

does not necessarily affect the substantial rights of the defendant as required by Olano's third prong. See David, 83 F.3d at 647 (harmless-error analysis identical to Olano third-prong analysis); Floresca, 38 F.3d at 713 (same). Only if the erroneous instruction prejudices the outcome of the trial will Olano's third prong be satisfied.

2.

In analyzing whether Appellants' substantial rights were affected by the district court's misinstructions, i.e., in assessing whether the district court's error was harmless vel non,[9] I am compelled to conclude that Chong and Chang were not prejudiced by the district court's erroneous jury instruction. Cf. United States v. Taylor, 102 F.3d 767, 771 (6th Cir. 1996) (holding that the district court's erroneous § 924(c)(1) instruction did not affect the defendant's "substantial rights by prejudicially influencing the outcome of the trial proceedings"); United States v. Price, 76 F.3d 526, 529 (3rd Cir. 1996) (holding that district court's erroneous § 924(c)(1) instruction was harmless error because it was an error "of statutory interpretation, not constitutional in nature," and because "non-constitutional error is

_____

cific error at issue here -- an error in the instruction that defined the crime -- is . . . as easily characterized as a`misdescription of an element' of the crime, as it is characterized as an error of `omission.'" (quotation omitted)). However, the Supreme Court itself distinguished between misinstructing and failing to instruct the jury on an essential element in Johnson when it declined to decide whether failing to instruct defies harmless-error review, but held that "improperly instructing the jury on an element of the offense . . . [is] an error which is subject to harmless-error analysis." 117 S. Ct. at 1550. Accordingly, these two types of instructional error are distinct.

[9] Inasmuch as the Supreme Court in Olano and in Johnson equated the question of whether under Federal Rule of Criminal Procedure 52(b) the defendant's substantial rights were affected by the district court's error with the question of whether under Federal Rule of Criminal Procedure 52(a) the district court's error was harmless, see Olano, 507 U.S. at 734, and Johnson, 117 S. Ct. at 1549-50, I will do the same. See also United States v. David, 83 F.3d 638, 647 (4th Cir. 1996) (harmless-error analysis identical to Olano third-prong analysis); United States v. Floresca, 38 F.3d 706, 713 (4th cir. 1994) (en banc) (same).

19

harmless when it is highly probable that the error did not contribute to the judgment" (quotations omitted)); but cf. United States v. Rehkop, 96 F.3d 301, 306 (8th Cir. 1996) (holding that § 924(c)(1) instructional error affected defendant's substantial rights); United States v. Webster, 84 F.3d 1056, 1067 (8th Cir. 1996) (same). My careful review of the record reveals that the district court's misinstruction on "use" was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." Yates, 500 U.S. at 403.

The evidence that Chang served as a guard at the Mitchelville safehouse, that Chong supervised the guards at both the Upper Marlboro and the Mitchelville safehouses, and that the guards actively employed firearms during the underlying crime of violence, permits no other conclusion but that Appellants used or carried (or aided and abetted the using or carrying of) firearms in the post-Bailey sense of those terms in violation of § 924(c)(1). The victims of the kidnapping were confined in a basement against their wishes by guards who, at the very least, moved around with firearms in their possession. There is absolutely no evidence of the sort of possession that would not violate § 924(c)(1). Indeed, I cannot imagine a hostage scenario where a kidnapper could possess a firearm without also using or carrying it. Here, the guards possessed firearms on their persons while moving around the safehouse, marching hostages upstairs to make extortionate phone calls, and so forth. Thus, the evidence leads to the unavoidable conclusion that the guards "carried" firearms in violation of § 924(c)(1). See Mitchell, 104 F.3d at 653 (holding that "carrying" a firearm requires possession, plus some manner of movement or conveyance). Moreover, hostages testified that they were afraid to leave the basement because the guards were armed, evidencing that the guards displayed their weapons to the hostages (who greatly outnumbered them), thereby establishing that Appellants violated § 924(c)(1)'s "use" prong. See Bailey, 116 S. Ct. at 508 (holding that "use" of a firearm "includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm" (emphasis supplied)). Indeed, the record reveals that the guards were shown how to gesture with the guns in a threatening manner for the purpose of intimidating the hostages.

Chong and Chang claim that some hostages testified only that "appellants possessed firearms in the place where they committed a crime

20

of violence," not that Appellants used or carried firearms. (Appellants' Supp. Br. at 21-22.) Mere possession of a firearm, they correctly state, does not violate § 924(c)(1). See Bailey, 116 S. Ct. at 508. Appellants argue that because such evidence of mere possession was presented to the jury, "it is impossible to determine whether the verdict was based on a legitimate theory of `active employment.'" (Appellants' Supp. Br. at 21.) Thus, they contend that their § 924(c)(1) convictions must be reversed.

I simply cannot agree. At no time was evidence of mere possession presented to the jury. Several testifying hostages answered affirmatively the prosecution's question, "Did you see anyone who possessed a firearm?" For example, hostages Chen Xiao Tao and Guang Yong Wang testified that Appellants possessed firearms. Standing alone this testimony might establish only mere possession. The testimony of these hostages, however, consisted of much more. Chen Xiao Tao testified that he was "confined to a basement" by the guards where he had "no freedom" (J.A. at 157), that the guards were armed, that he heard a gunshot during the time he was held hostage, and that Chang was one of the guards. He also testified as follows:

> Q Did you ever attempt to leave the house? . . .
>
> A Yes. I want to leave the house badly, but I couldn't.
>
> Q Why couldn't you leave?
>
> A Because guards, they have the gun.

(J.A. at 158.) This testimony plainly presented evidence to the jury of post-Bailey and post-Mitchell use or carrying of a firearm.

Guang Yong Wang's testimony also presented evidence to the jury of post-Bailey and post-Mitchell use or carrying. After testifying that he was confined in the basement by armed guards, and that one of the guards was Chang, Guang Yong Wang engaged with the prosecutor in the following colloquy:

> Q Was he, was [Chang] one of the people who was watching you when you were at the house that you've been telling us about?

21

A Yes.

Q When you were at the house, did you ever try to leave?

A Yes.

Q Did you ever leave the house?

A No.

Q Why not?

A I was so scared.

Q Why were you scared?

A Because they have gun.

Q Do you see anyone in this room who you noticed in possession of a firearm while you were staying at that house in the basement that you've been telling us about?

A [Chang].

Q How many times do you believe that you saw him with a firearm?

A Every time I saw him he had the gun with him.

* * *

Q How many times, in terms of numbers of occasions if you can estimate, do you believe that you saw [Chang] in possession of a firearm?

A I don't remember. I just can say whenever I saw him, he had a gun.

22

(J.A. at 216.) The testimony of Chen Xiao Tao and Guang Yong Wang is emblematic of the testimony given by all of the testifying hostages. My review of the record reveals that no hostage testified of possession that would not violate § 924(c)(1).

Chang was positively identified at trial as one of the guards and has never contended that he did not actively employ a firearm in his role as a guard of the hostages. See Olano, 507 U.S. at 734 (stating that under Rule 52(b), "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice"). Although Chong contends that he did not use or carry a firearm in connection with the underlying crime of violence, the evidence that he supervised the guards who actively employed firearms -- thereby aiding and abetting the use or carrying of a firearm in violation of the statute -- is overwhelming.[10] Consequently, the guilty verdicts ren-

---

[10] Because the evidence that Chong supervised the guards who actively employed firearms is overwhelming, I reject Chong's assertion that the evidence was insufficient to support his conviction under § 924(c)(1). When reviewing a sufficiency-of-the-evidence claim, the jury's verdict will be sustained "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087 (1997). Here, the evidence in the trial record is more than sufficient to support the jury's determination that Chong used or carried a firearm, or aided and abetted the same, in violation of § 924(c)(1). As I have stated, he supervised the guards, first at the Upper Marlboro safehouse and then at the Mitchelville safehouse. At both places the guards were armed. The trial record reveals that the guards at the Mitchelville safehouse confined the hostages in the basement of the house at gunpoint. Based on these facts, I conclude that the evidence was more than sufficient to support Chong's conviction for using or carrying a firearm, or aiding and abetting the same, during and in relation to a crime of violence. See United States v. Cook, 76 F.3d 596, 603 (4th Cir.) (affirming § 924(c)(1) conviction and stating that "the evidence . . . was clearly sufficient to support the conclusion that [the defendant] knew that [his cohort] was brandishing a gun during the drug transaction"), cert. denied, 117 S. Ct. 320 (1996); United States v. Hayden, 85 F.3d 153, 162 (4th Cir. 1996) (holding that evidence was sufficient to support § 924(c)(1) conviction); see also United States v. Mitchell, 104 F.3d 649, 654 (4th Cir. 1997) (holding that evidence was sufficient to provide factual basis for defendant's guilty plea to § 924(c)(1) charge).

23

dered by the jury against Appellants on the § 924(c)(1) counts were surely unattributable to the district court's misinstruction error. See Taylor, 102 F.3d 767, 771 ("Because a properly instructed jury would have concluded that defendant [carried a firearm], the error did not affect a substantial right of the defendant and, therefore, we find no plain error in the jury instructions."); see also Pope, 481 U.S. at 502 (holding that guilty verdict for selling obscene magazines could be affirmed despite jury misinstruction "if it can be said beyond a reasonable doubt that the jury's verdict in this case was not affected by the erroneous instruction"). Accordingly, I would affirm Appellants' § 924(c)(1) convictions.

D.

Even if the district court's misinstruction was not harmless, and affected Appellants' substantial rights, I would nevertheless affirm Appellants' § 924(c)(1) convictions. "When the first three parts of Olano are satisfied, an appellate court must then determine whether the forfeited error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings before it may exercise its discretion to correct the error." Johnson, 117 S. Ct. at 1550 (quotations omitted) (alteration in original). This Circuit has previously held that "[c]entral to this inquiry is a determination of whether, based on the record in its entirety, the proceedings against the accused resulted in a fair and reliable determination of guilt." United States v. Cedelle, 89 F.3d 181, 186 (4th Cir. 1996).

In the circumstances of this case, I believe that declining to correct the error will not result in a miscarriage of justice or seriously affect the fairness, integrity, or public reputation of judicial proceedings because, viewing the record as a whole, the proceedings resulted in a fair and reliable determination of Appellants' guilt. See United States v. Miner, 108 F.3d 967, 969-70 (8th Cir. 1997) (declining to notice and correct district court's erroneous Bailey instruction because "it is inescapably clear . . . that a properly instructed jury would have convicted" defendant); see also Johnson, 117 S. Ct. at 1550 (declining to reverse where trial court failed to instruct jury on essential element of the crime because evidence of guilt was "overwhelming"); Cedelle, 89 F.3d at 186 (declining to reverse where trial court failed to instruct jury on essential element of the crime because evidence presented at trial "permit[ted] no other conclusion" but that defendant was guilty).

24

As I have stated, the evidence that Appellants used or carried (or aided and abetted the using and carrying of) firearms is overwhelming. Appellants were armed kidnappers who held over fifty hostages captive for several weeks. Moreover, the evidence that Chang served as a guard at the Mitchelville safehouse, that Chong supervised the guards at both the Upper Marlboro and the Mitchelville safehouses, and that the guards actively employed firearms during and in relation to the underlying crime of violence, permits no other conclusion but that Appellants used or carried firearms, or aided and abetted the same, in violation of § 924(c)(1). Cf. David, 83 F.3d at 648 (noticing plain error of the district court in failing to instruct on an essential element of the crime because a jury conceivably could have determined that the Government had not proven that element). Consequently, it is "inescapably clear," see Miner, 108 F.3d at 969, that the jury would have convicted Appellants absent the district court's error.

Thus, there is no basis for concluding that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

> Indeed, it would be the reversal of a conviction such as this which would have that effect. "Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." R. Traynor, The Riddle of Harmless Error 50 (1970).

Johnson, 117 S. Ct. at 1550. Moreover, "to expend the judicial resources necessary for a retrial would be more detrimental to the fairness, integrity, and public reputation of judicial proceedings than permitting [Appellants'] conviction[s] to stand." Cedelle, 89 F.3d at 186 (citing United States v. Ross, 77 F.3d 1525, 1540-41 (7th Cir. 1996)). Accordingly, even if the instructional error here affected Appellants' substantial rights (which it does not), I would decline to notice it.

II.

For the foregoing reasons, I vote to affirm Appellants' convictions for using or carrying a firearm, or aiding and abetting the same, during and in relation to a crime of violence in violation of 18 U.S.C.A. § 924(c)(1).